KETTLEKAMP ET AL., APPELLANTS, *v.* WATKINS ET AL., RESPONDENTS.

(No. 5,469.)

(Submitted April 22, 1924.   Decided May 6, 1924.)

[225 Pac. 1003.]

*Partnership—Accounting—Construction of Contract—Statute of Frauds—Real Property—Parol Lease—Part Performance —What Constitutes.*

Partnership—Construction of Contract—Rule.

1. An agreement (modifying the terms of a partnership contract) must be construed in the light of the circumstances surrounding the parties at the time it was entered into, not in the light of what transpired later.

Same—Contract Construed.

2. An agreement between five members of a medical partnership, two of whom had been absent from the business on account of sickness for some time, providing among other things that the two should have a leave of absence for three months; that they should retain their interest in the equipment of the firm; that all accounts due it should be collected by the remaining members and that after the return of the two they should again participate in the division of the funds and outstanding accounts but should not receive any portion of the proceeds of the business conducted during their absence, construed to mean that the absent members in addition to retaining their interest in the equipment were entitled to participate in the accounts not collected during their absence but that the accounts collected in the interim by the remaining three belonged to them.

Same—"Vacation" Held to Include Absence on Account of Sickness.

3. Under a partnership providing for a six weeks' vacation for each member of the firm without deduction from the income, *held* that "vacation" means absence from any cause and therefore included absence on account of sickness.

Same—Practical Construction of Contracts by Parties—When Rule Inapplicable.

4. The rule that where parties to a contract of doubtful or ambiguous meaning have placed a practical construction upon its terms such construction is one of the best indications of their true intent in entering into it has no application to a writing the terms of which are reasonably clear.

Same—Yearly Division of Profits—Periodical Divisions Before Close of Year Held not Practical Construction by Parties.

5. Under a partnership agreement providing that each of its members should have a vacation of six weeks without any deduction of profits "for the year" and that a certain per cent of the income from the first year should be paid to two members before the remaining amount should be divided between all five of its members

*held* to have contemplated division of the profits at the end of the year only, and that therefore periodical divisions prior to that time without reference to the time the members were absent must be deemed to have been advances to the members receiving them and may not be regarded as a practical construction of the contract entitling them to a full share of the profits, even though absent in excess of six weeks during the year.

Statute of Frauds—Parol Lease of Real Property—What Constitutes Part Performance.

6. Part performance of a parol lease of real property for a term beyond that allowed by the statute of frauds (sec. 7519, subd. 5, Rev. Codes 1921) takes it out of the operation of the statute, and taking possession, making alterations in the building and paying the rent agreed upon for a considerable period of time constitute part performance.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

SUIT by G. D. Kettlekamp and another against C. F. Watkins and others for an accounting for partnership assets. Judgment for plaintiffs and both parties appeal. Remanded, with directions, and judgment modified and affirmed.

*Mr. James L. Davis* and *Messrs. Johnston, Coleman & Johnston,* for Plaintiffs, submitted briefs as Appellants and Respondents; *Mr. J. H. Johnston* argued the cause orally.

*Messrs. Nichols & Myers,* for Defendants, submitted an original and a reply brief; *Mr. Henry L. Myers* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On January 1, 1920, Doctors C. F. Watkins, A. E. Stripp, L. W. Allard, G. D. Kettlekamp and F. O. Kettlekamp formed a partnership for the practice of medicine and surgery at Billings. The partnership agreement provided, among other [1] things, that each partner should contribute an equal amount toward the office equipment; that each should be entitled to a vacation of six weeks during the year without loss of compensation; and that the net proceeds of the business

should be distributed according to a prescribed schedule.
Doctors Watkins and Stripp had been engaged in the practice
of their profession as partners, but their office quarters were
inadequate for the five members of the new firm, and addi-
tional rooms were rented and extensive equipment installed.
The new partnership business was entered upon and carried
forward until September 13, 1920. At that date money had
been collected and distributed according to the original agree-
ment and accounts for services rendered aggregating a large
amount were outstanding. Largely, if not entirely, on account
of illness each of the Doctors Kettlekamp had been absent from
the business for more than six weeks, and because of continued
illness and the necessity for each of them to be absent for a
further considerable period of time, a second agreement was
entered into on September 13, as follows:

"That Doctors F. O. Kettlekamp and George D. Kettlekamp
retain their one-fifth interest in the equipment of the said firm
of Doctors Watkins, Stripp, Allard, Kettlekamp and Kettle-
kamp.

"That all accounts due said firm to date shall be collected
by Doctors Watkins, Stripp and Allard and after the return of
Doctors F. O. Kettlekamp and George D. Kettlekamp they shall
again participate in the division of funds on outstanding ac-
counts as per contract on file, it being understood that the time
Doctors F. O. Kettlekamp and George D. Kettlekamp are ab-
sent shall be deducted from the year specified in the contract.

"It being understood that Doctors F. O. Kettlekamp and
G. D. Kettlekamp shall not be absent over three months and
if it is necessary for them to be absent longer new arrange-
ments must be entered into which will be satisfactory to all
concerned."

Pursuant to this agreement the Doctors Kettlekamp left
Billings and never returned to the business, but on November
15, 1920, formally withdrew from the partnership with the
consent of the other members, who continued as partners in

the offices which the five had occupied. After the dissolution on November 15, this action was instituted by the Doctors Kettlekamp to secure an accounting and an adjustment of the partnership affairs. Issues were framed and a referee appointed who examined the books, took testimony and reported his findings. Additional evidence was heard by the court and findings made, from which the conclusion was drawn that plaintiffs were entitled to recover.

In arriving at the amount of the recovery, the court charged the defendants with money collected by them from the accounts outstanding September 13, and with the value of the office equipment. It charged the plaintiffs with . the amount of money collected by them from the outstanding accounts, with the value of the time lost by each of them in excess of six weeks, and with $611 for extra office rent, and, making a distribution of these several items according to the terms of the original agreement, rendered and had entered a judgment in favor of the plaintiffs for $1,724.23, from which judgment both plaintiffs and defendants appealed.

Plaintiffs insist that the judgment should be for $3,197.98, whereas defendants urge that they are not liable in any amount. The parties do agree that the determination of the merits of the controversy depends upon the proper interpretation of the contract of September 13, but they are unable to agree as to what that contract means.

It is the contention of the defendants that the five-party partnership was dissolved on September 13; that the plaintiffs retained only their respective interests in the office equipment; and that an accounting was not necessary, since the plaintiffs had been compensated for that item. Plaintiffs contend that their return to participation in the partnership business was a condition precedent to the contract of September 13 becoming effective, and, since they did not return, the rights and liabilities of the parties are to be determined by the original partnership agreement, though they do not insist upon an accounting

as to the business transacted after September 13. We find ourselves unable to agree with either of these contentions or with the theory adopted by the trial court.

The contract of September 13 is to be construed in the light [2] of the circumstances which surrounded the parties at the time it was entered into, not in the light of events which later transpired. That they did not intend to terminate their relationship, but, on the contrary, assumed that the Doctors Kettlekamp would return and resume active participation in the business, appears to us to be reasonably certain from the terms employed. Indeed, every recital in the contract after the first one would be meaningless if the partnership were dissolved on September 13, for in that event neither of the plaintiffs would have any interest in the matters to which the recitals relate. On the other hand, there is not a provision contained in the contract which suggests to our minds the idea that the return of the Doctors Kettlekamp within three months was a condition precedent to the contract becoming effective. Although it is very informal, yet, viewed in the light of the surrounding circumstances as disclosed by the evidence, its purpose and meaning are not difficult to discern. The second paragraph presents the principal bone of contention.

Defendants insist that plaintiffs surrendered all of their interest in the accounts then outstanding, and the introductory words of the paragraph, if standing alone, would compel that conclusion; but they do not stand alone. It is provided that upon their return the Doctors Kettlekamp should participate in the division of funds arising from the "outstanding accounts." Now, it was understood by all five members that the plaintiffs were not to receive any portion of the proceeds of the business conducted during their absence, so that the terms "outstanding accounts," as employed in the contract, must refer to accounts outstanding September 13, and which were not collected by the defendants during the absence of the plaintiffs. True, defendants were given the right to collect all or

any of the outstanding accounts and retain the proceeds as their own, but such of the accounts as they did not collect remained partnership property, and the fact that the Doctors Kettlekamp did not return to active participation in the business did not alter the character of that property.

It seems manifest to us that the contract of September 13 was intended to have, and did have, this effect: The Doctors Kettlekamp were granted leave of absence for a period not to exceed three months, and the rights of the five partners, so far as they were affected by that leave of absence, were determined in advance. As a consideration for carrying on the business, the defendants were to collect and retain for themselves whatever they could upon the accounts outstanding September 13, and were to have all of the proceeds of the business during the leave of absence. The consideration to the plaintiffs was that they retain their interest in the equipment, in the outstanding accounts not collected by the defendants, and their position as members of the partnership with the right to return and participate in a going, prosperous business carried on and preserved to them by the skill, ability and attention of the defendants. The contract became effective immediately and served its purpose until terminated by the dissolution of the partnership on November 15.

We think the trial court adopted an erroneous theory for the adjustment of the rights of the parties. The funds collected by the defendants on accounts outstanding September 13 belonged to them absolutely and are not to be considered in an accounting, but money and other credits (called liquid assets) on hand September 13 and not mentioned in the contract, remained partnership property, as did the office equipment and the outstanding accounts not collected by the defendants. The liabilities of the partnership on September 13, amounting to $1,196.36, were chargeable against the partnership property and against the partners in equal proportions according to the original agreement. Of the accounts outstanding September

13, and not collected by the defendants, amounting to $10,-956.78, $7,974.28 worth were held by the defendants, and $2,982.50 worth were held by the plaintiffs. Defendants had the "liquid assets" amounting to $478.41 and the office equipment valued at $3,942.28. The plaintiffs were entitled to forty per cent of the equipment and to thirty-six per cent of the liquid assets and accounts, and were responsible for forty per cent of the partnership liabilities. Up to this point the account would appear as follows:

Value of equipment...........$ 3,942 28 — 40% — $1,576 91
Liquid assets.................    478 41 — 36% —    172 22
Uncollected accounts..........  10,956 78 — 36% —  3,944 44
                               _____           _____
                               $15,377 47          $5,693 57

Conceding to the plaintiffs a gross credit of $5,693.57, the remaining question arises: With what amount, if any, are they chargeable? Apparently all of the uncollected accounts were treated as of face value, and that plaintiffs are to be charged with the $2,982.50 worth received and retained by them, and with forty per cent of the partnership liabilities, must be conceded.

The trial court charged the plaintiffs with $1,191 on account of time lost by them in excess of six weeks and with $611 on account of the extra office rental, and exception is taken by them to the action of the court in each instance.

The original partnership agreement contemplated clearly [3] that if any member of the partnership took a vacation for more than six weeks in any one year, he should suffer a reduction of income accordingly; but plaintiffs insist that the term "vacation" was not intended to include absence from the business on account of sickness. The statute (sec. 7535, Rev. Codes 1921) provides that the words of a contract are to be understood in their ordinary and popular sense, in the absence of anything to indicate a different intention on the part of the users of the words. The term "vacation" means: An in-

termission of procedure; a stated interval in a round of duties or employment; freedom or relief from duty. (New Standard Dictionary.) This definition, as applied to the instant case, clearly includes absence from the duties of the partnership [4, 5] occasioned by any cause; but plaintiffs contend, further, that by dividing the net proceeds prior to September 13 without reference to the time each partner was absent, the parties themselves gave a practical construction to the term "vacation" in harmony with their contention.

The original partnership agreement provides that the expenses of the business shall be paid first, and that ten per cent of the net income for the first year shall be paid to Doctors Watkins and Stripp and the remaining ninety per cent divided equally among the five.

It then provides for the six weeks' vacation for each member "without any deduction being made from his part of the fees and profits for the year." In the absence of anything to suggest a different construction, it would seem to follow that the partners intended to make a final division of the profits at the end of the year and not oftener, so that their periodical divisions of funds on hand prior to September 13 should be understood as advances made to each member. So far as the record discloses, the subject was considered but once when Dr. Watkins suggested that no deductions be made at that time on account of the absence of the Doctors Kettlekamp for more than six weeks.

In *Butte City Water Co.* v. *City of Butte*, 48 Mont. 386, 138 Pac. 195, this court said: "It is an ancient and elementary rule that, where parties to a contract of doubtful or ambiguous meaning have placed a practical interpretation upon it, said interpretation is one of the best indications of their true intent. * * * But the contract is not subject to interpretation by the parties or by anyone else concerning any matter upon which it clearly speaks."

Upon this particular matter the contract is reasonably clear, and its terms should not be varied by the acts of the partners mentioned above. In principle, the court was correct in charging the plaintiffs for the value of the extra time lost, but the amount should have been $1,151.69, instead of $1,191, as found by the court.

At the time the partnership of five was formed, additional rooms were rented under a parol agreement, for two years. [6] Extensive and expensive alterations in the building were made to accommodate the partnership, and these extra rooms were used and the advanced rent paid by the partnership of five up to September 13. The expense of the alterations was paid, one-half by the owner of the building and one-half by the partners. When the partnership was dissolved on November 15 no provision was made for the payment of the rent on the extra rooms not needed by the defendants, for the unexpired term of thirteen and a half months. There cannot be any doubt that the obligation, if any, to pay the rental for that term was a partnership obligation for which plaintiffs are chargeable to the extent of forty per cent of the amount; but they insist that since the lease for the term of two years rested in parol, it was invalid under the statute of frauds (sec. 7519, Rev. Codes 1921), hence no part of the rental for the unexpired portion of the term was collectible, and they cannot be held for any portion of it. However, they fail to recognize the distinction between a parol lease entirely executory and one which has been partially performed. The modern American and English authorities are practically unanimous in holding that part performance of a parol lease for a term beyond that allowed by the statute of frauds will take it out of the operation of the statute. While there is some diversity of opinion as to the acts which will constitute part performance sufficient to remove the lease from the operation of the statute, the overwhelming weight of authority sustains the view that taking possession and making alterations of the property and paying

the rent agreed upon for a considerable period of time—as in the case before us—constitute part performance, within the general rule stated above. The decided cases which support this view are too numerous to be cited here. They will be found collected in the notes to *Halligan* v. *Frey*, 49 L. R. A. (n. s.) 113. (See, also, *Edwards* v. *Spalding*, 20 Mont. 54, 49 Pac. 443, and 1 Tiffany on Landlord and Tenant, sec. 25, subd. 5.)

The extra room rent amounted to $634.50, and the account should stand as follows:

| Cr. | | Dr. |
|---|---|---|
| $5,693 57 | $2,982 50 | Accounts. |
| | 478 54 | 40% of liabilities. |
| | 253 80 | 40% of extra rental. |
| | 1,151 69 | Time lost. |
| | $4,866 53 | |
| | 827 04 | Balance due plaintiffs. |
| $5,693 57 | $5,693 57 | |

The cause is remanded to the district court, with directions to modify the judgment by reducing the amount to $827.04 as of date of the original judgment, and when so modified it will stand affirmed. The defendants will recover one-half of their costs on appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.