## HEILBRON v. STUBBLEFIELD.
### No. 4495.

Court of Civil Appeals of Texas. El Paso.
March 13, 1947.

Rehearing Denied May 1, 1947.

Conger & Baskin and Lannette Heilbron Glasscock, all of San Antonio, for appellant.

Paul E. Casseb, of San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal from the district court of Bexar County, 73rd Judicial District. Mrs. Lucille Stubblefield, as independent executrix and surviving widow of her deceased husband, Warren D. Stubblefield, Jr., sued A. E. Heilbron, Jr., to recover one-half of the profits made by the former partnership of Heilbron & Stubblefield. This firm was composed of plaintiff's deceased husband and defendant Heilbron, and was engaged in the insurance agency business in the city of San Antonio.

The defendant specially plead that on or about November 20, 1940, Warren Stubblefield entered the armed forces of the United States, at which time it was agreed by and between the said Stubblefield and defendant that so long as Stubblefield was in the armed forces defendant should operate the partnership business and retain as compensation therefor all profits; and from and after said date he did operate the partnership business without the aid of said Stubblefield; that at the time of this contract the undivided profits in the firm amounted to the sum of $1,000 one-half of which he offered to account for to plaintiff, less reasonable expenses in connection with the making of collection thereof.

In the alternative he plead that from the entry of Stubblefield into the military forces in November, 1940, to the date of his death on June 12, 1944, Stubblefield had been in the active military service of the United States, had in no way been active in the partnership, and that all earnings were solely due to defendant's activity therein; that a reasonable compensation for his services was $200 per month. Recovery in this amount was alternatively sought.

The trial was before the court with a jury. The case was submitted upon two special issues; the first as to whether in November 1940 the oral contract alleged by defendant was entered into. On this issue the verdict was there was no such contract. In response to the second issue the jury found the reasonable value of defendant's services in prosecuting the partnership business from November 1940 to the date of Stubblefield's death on June 12, 1944, was the sum of $10 per month. Defendant has perfected this appeal. Appellant will be designated here as defendant, and appellee as plaintiff.

The defendant asserts two errors as to the argument. The verdict on each of the issues is vigorously assailed as being without support from the evidence or in any event against the overwhelming preponderance thereof. If defendant be correct as to his complaint on the first issue, this disposes of the appeal. Without dispute the following facts were established: The partnership was entered into about January 15, 1940. From that time up to November 1940 each party devoted his time and attention to the business. During that period the books showed a net profit of a thousand dollars. Warren Stubblefield died in France on June 12, 1944. From November 1940 to June 12, 1944, the books showed a net profit of $4,599.42. For each period nothing is allowed for the services of either party. Such net profits have all been appropriated by defendant, or at least are under his custody and control. It was neither alleged nor proven that the partnership was free from liabilities. However, no liabilities were shown to exist. These profits were perhaps the only assets of the partnership, at least no other were either claimed or shown by the evidence.

From November 1940, the date of the entrance of plaintiff's husband into the military service of the United States, to June 12, 1944, the date of his death, he never acted in the business of the partnership and most of the time was away from San Antonio. There was evidence that one time he informed defendant as to a demand for automobile liability insurance at Camp Bowie, and defendant acted thereon.

It is undisputed that during most of the time between November 1940 and June 1944 defendant was employed as a rent inspector in the city of San Antonio by the O.P.A. at a salary of from $2,600 to $3,200 per annum. This employment occupied most if not all of the business hours of the day. Defendant also performed some services for his sister, who was Executrix of his father's estate. From the evidence it may be reasonably inferred that this estate was extensive and in part composed of some 40 or 45 pieces of property. Such time as defendant devoted to the business of the partnership was as a rule after business hours, on Sundays, holidays and before business hours. At times he was at the place of business during the noon hour.

Defendant clearly and unequivocally testified that when Stubblefield went into the army it was agreed between them that during the time Stubblefield was in the army defendant was to receive and appropriate to his own use the profits of the business; that when Stubblefield was discharged he should resume his activity and receive one-half of the net profits of the

business. The business was conducted in the name of the firm. Mrs. Glasscock, a sister of the defendant, testified in substance that Stubblefield had told her that while he was in the army defendant was to receive all of the profits from the business for conducting same. Mrs. Glasscock was an attorney at law, and for most of the relevant time made out income tax returns for the partnership. She testified for all years except 1940 defendant charged himself with the entire profits of the business.

Defendant and Stubblefield operated in connection with the partnership business a life insurance business. Stubblefield on November 18, 1940, executed a writing wherein he purported to convey to defendant earned and unearned income on life insurance policies written for the insurance company by the firm. J. W. King, agent for the insurance company, testified to the execution of this instrument by Stubblefield. He further testified that defendant and Stubblefield stated to him that they were going to do the same thing about the fire and casualty business, that is, for Mr. Heilbron to receive the profits from the business while the partnership was going on, the partnership to so remunerate him for staying here and keeping the business running. Witness stated "That is the way they put it to me." He did not, however, state that it was stated to him that a contract had been closed.

Bruce Waitz testified in substance as follows: He had known Stubblefield and defendant for about ten or fifteen years, was a personal friend of each. Witness was an attorney at law and had attended to the legal affairs of the partnership up to the time he went to the army. At the direction of defendant he prepared a draft of a written contract whereby defendant was to receive all the profits of the partnership during the absence of Stubblefield in the army, and if within one year Stubblefield returned he was to resume his active connection with the partnership and to share the profits; if he did not return within one year he was to have no further interest in the partnership. This proposed contract was discussed in the presence of the witness but the one year provision was unsatis-

factory to Stubblefield. It was agreed between them to eliminate the one year provision. This was assented to by each. Quoting literally one of his answers:

"At that time the agreement was reaffirmed between the parties in my presence, to the effect that Mr. Stubblefield would forfeit, or would turn over to Mr. Heilbron, all his interest in any profits in the business during Mr. Stubblefield's period of military service, in consideration of Mr. Heilbron forwarding and carrying on the business in order that upon the expiration of this military service Mr. Stubblefield would have a business in a going concern to come back to."

Stubblefield in any event purported to give his interest in the partnership to defendant. So far as the evidence goes, from the time Stubblefield went into the military service in November 1940 to the date of his death in June, 1944, he never shared in any profits of the partnership or asserted a right to share therein, unless his will be considered as such assertion. As to the existence of the contract relied upon by defendant, his testimony seems clear and unequivocal. So is the testimony of his sister. The testimony of the witness King in a measure corroborates that of defendant. Defendant testified that they did the very thing that King was told they were going to do. It may be that the testimony of defendant and that of his sister, if standing alone, might be insufficient to establish the issue relied upon by defendant, defendant's credibility being affected by his financial interest and that of his sister by her relationship to defendant. Waitz is clearly disinterested. There is not a breath of suspicion cast against his testimony. He was an attorney, and at the time of testifying in the military service of his country. He at least had no motive to defraud the widow of a gallant fellow soldier who had surrendered his life to his country.

 A jury should not, in arriving at its verdict, disregard clear, unequivocal, uncontradicted and disinterested testimony. There is nothing inherently improbable in the testimony of the defendant, Mrs. Glasscock and Waitz. Waitz seems to have had

the ability to receive correct impressions and to impart them truly.

A judgment cannot be supported on the finding of the Jury that is without support in the evidence and against the uncontradicted and unimpeached evidence. The finding here is in the face of the undisputed testimony. Defendant's objection to the submission of the issue as to the existence of the contract plead was good, likewise the court should have sustained defendant's motion for judgment non obstante veredicto. Where the evidence as to an issue is of such character that the minds of reasonable persons cannot differ relative thereto, there is no question of fact, but a question of law is tendered. 17 Tex.Jur. p. 926, par. 418; Heiner v. Homeland Realty Co., Tex.Civ.App., 100 S.W.2d 793 and authorities cited; Myrick v. Central Texas Securities Corporation, Tex.Civ.App. 122 S.W.2d 687. Precedents might be multiplied sustaining the proposition enunciated above. Considering the evidence as a whole it is thought to apply here and govern the proper disposition of this case. The evidence seems to have been fully developed.

It is recognized in the absence of contract either express or implied the individual partner is not entitled to compensation from the partnership for services performed in the prosecution of its business. Each partner, in ordinary cases, is a principal rather than an employee. However, under the undisputed evidence here there was an express contract to the effect that defendant have the profits realized during the time his partner was in the army of the United States. Before Stubblefield went into the army the net profits of the concern were $1,000. Under the testimony such profits were not affected by the contract; as a matter of law the defendant was not entitled to compensation for collecting these earned profits, although perhaps collected after Stubblefield had ceased to be active in the business.

The judgment of the trial court is reversed and judgment here rendered that plaintiff recover of and from defendant the sum of $500, same to bear interest at the rate of six per cent per annum from the 9th day of April, 1946.