SAM SCHNEIDER, Appellant, v. ISRAEL D. NEWMARK, Respondent, No. 41054—224 S. W. (2d) 968.

Division One, November 14, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, December 12, 1949.

*Noah Weinstein* for appellant; *Roberts P. Elam* of counsel.

*Victor Packman* for respondent.

958

VAN OSDOL, C.—Action for dissolution of a partnership, and for an accounting. The trial chancellor dismissed the petition, and plaintiff has appealed. The amount plaintiff seeks to recover in accounting is greatly in excess of $7500.

The case treats with the effect of acts, words and conduct in modifying the contractual relations of two doctors who were, for a time, associated as partners in the practice of medicine and surgery.

Prior to the year 1940, defendant, who was in the general practice of medicine and who did no major surgery, had established a practice at Chester, Illinois. He was acquainted with plaintiff, a younger man, who was married to defendant's cousin. Plaintiff completed his professional training in 1940, having specialized in surgery; the parties became associated in the practice of medicine and surgery in Chester in July of that year. Plaintiff's association with defendant contemplated a hospital at Chester, and defendant had

caused a hospital to be established. Plaintiff contributed $2500 toward acquiring a half interest in the instruments, equipment, drugs and supplies used by the parties in their practice.

Plaintiff received $3000 for his first year's work with defendant, it having been verbally ▆▆▆ agreed that if defendant were satisfied with plaintiff's skill the association was to "automatically" become a full partnership at the end of such year, each of the parties to then receive half of the net income.

The parties are able and skillful practitioners of their profession. Their joint practice was successful and lucrative.

In August 1941 plaintiff received his "first check" for $350, being a monthly advance on his half of the partnership's net earnings. Thereafter, in December 1941 or January 1942, there was an accounting (and settlement) for the preceding six months' income, and another periodical accounting was had at the end of the second six-month period; but during the third six-month period (in October 1942) the plaintiff was called into military service. At that time there was a deduction of the $350 per month theretofore advanced, and plaintiff received approximately $2000 for "the half, from July until October, half of the net" then collected, after which plaintiff left for duty with the Armed Forces.

Since defendant was not a surgeon, the hospital was closed down and disposed of. Some of the hospital supplies were given away, and defendant continued to use some of the equipment. (The parties have agreed upon a settlement of the issues of a claim for a division of the "capital assets.")

When plaintiff departed for military service, there was no express agreement relating to the dissolution of the partnership, nor was there an express stipulation relating to the division of the income of the parties while plaintiff was in the Army. But defendant explained to plaintiff that plaintiff would get remittances "for the accrued accounts that had been earned prior to" his departure. Defendant did not say plaintiff would "get anything for future money that he (defendant) would earn." When defendant explained what plaintiff was "going to get," plaintiff did not "say anything."

Plaintiff served as a medical officer until February 6, 1946, when he returned to St. Louis. Fifteen months of his service was in India. While plaintiff was away, defendant remitted to plaintiff (or to plaintiff's wife) sums totaling $2913.39. Defendant testified (and plaintiff testified he was of the opinion) these sums were half of the accounts receivable for the parties' practice prior to October 1942, but thereafter paid by patients to defendant. Throughout the time plaintiff was in the service, he and defendant exchanged numerous friendly letters. Plaintiff thanked defendant for remittances received. The plaintiff's letters contained no request for an accounting of any share of the moneys collected for services rendered by de-

fendant to patients after October 1942. Plaintiff testified he had intended to go back to Chester and resume his professional relationship with defendant under the "old terms."

While plaintiff was away (although the hospital at Chester had been discontinued) defendant's practice greatly increased. It seems defendant collected $50,000 in his practice in 1945. Several physicians within a radius of fifty miles of Chester had been called into the Armed Forces, and defendant worked very hard in answering the many calls for medical treatment.

After plaintiff's return, defendant was anxiously expecting plaintiff to resume the practice with defendant at Chester; but in early April 1946, plaintiff advised defendant that he, plaintiff, thought he should receive a third of what defendant had "netted while I (plaintiff) was gone." After some discussion over a period of several days defendant offered to pay plaintiff $25,000, and there was further conversation concerning the financing of another hospital at Chester. Defendant proposed to pay plaintiff $10,000 in cash and the balance, $15,000, "in the future." This seemed agreeable to plaintiff, but later, the "next day," plaintiff told defendant "it was off." Plaintiff entered the practice in St. Louis. At the trial plaintiff testified, "the fact I must receive the ten thousand dollars and possibly the rest of it in cash was enough for me to turn it down." The trial chancellor was of the apparent opinion the defendant's offer was only an inducement for and conditional upon plaintiff's return to Chester and his association with defendant ▮▮▮▮ in the practice there. The evidence upon this question was in conflict and in this connection we defer to the chancellor's ruling. (There was some evidence various relatives of plaintiff were urging him to practice in St. Louis.)

While in the Army plaintiff received $3100 in pay for the first year of duty as a lieutenant, and thereafter $3800 per year as a captain. He rendered no account of his earnings as a medical officer.

Plaintiff-appellant contends, (1) the evidence established the formation of a partnership in July 1941 for an indefinite term and no express agreement for dissolution when plaintiff entered military service; there was no evidence of a ground for dissolution as for breach, or any denunciation or abandonment of the partnership, and in the circumstances there was a presumption the partnership continued. (2) Plaintiff's "incapacity" as a partner due to his entry into military service did not in itself effect a dissolution; such an incapacity on account of military service is a risk incidental to a partnership business, and one upon entry into wartime military service does not necessarily abandon civilian pursuits. (3) There was no evidence of an accounting or of a settlement of the partnership business in 1942; on the contrary the evidence established defendant had liquidated or used some of the partnership properties and did not undertake to account to plaintiff for the proceeds or use of the proper-

ties until in 1946. And (4), irrespective of whether there was a dissolution in October 1942, the fiduciary relationship between the partners and defendant's use of the partnership properties after October 1942 entitles plaintiff to share in the profits earned while plaintiff was away.

.The trial chancellor when entering the order of dismissal made the findings that the professional partnership was oral and for no definite term, was terminable at will, and was in fact dissolved and an accounting had when plaintiff entered the Armed Forces; that defendant had accounted to plaintiff for moneys collected for treatments to patients prior to plaintiff's departure in October 1942; that plaintiff knew defendant was retaining all income due to defendant's sole efforts after October 1942, and did not question the propriety of such retention of such income until 1946; and that plaintiff did not offer to "pool" his pay as a medical officer. The chancellor was of the opinion there was no reason for the intervention of a court of equity.

In the instant case it seems the question whether the partnership was dissolved in October 1942 is of little moment. The partnership was not for a definite duration, and could be dissolved upon notice by either partner. Vol. 1, Rowley, Modern Law of Partnership, § 573, pp. 730-733. At least there could be no question but the partnership was dissolved in April 1946, when plaintiff rejected the proposition submitted by defendant, and went into practice in St. Louis. At that time plaintiff unequivocally manifested his intention to no longer practice in association with defendant at Chester. We agree with the trial chancellor's conclusion there was no need for the decree of a court in effecting a dissolution. However, the facts should be examined to ascertain if the chancellor was right in refusing to order an accounting for the moneys received by defendant for services rendered after October 1942. If the parties, partners, mutually understood and agreed that plaintiff would not receive a part of the partnership income while in military service, then there is no need for an order of accounting for such income, inasmuch as plaintiff does not contend defendant did not correctly account for plaintiff's half of the net income earned prior to October 1942.

As we have said, it was not expressly stipulated that plaintiff was not to share in net income earned subsequently to October 1942, yet the words, acts and conduct of the parties in the circumstances are sufficient to afford bases for the reasonable inference of such an agreement or mutual understanding. There is substantial factual basis for the reasonable inference the plaintiff's view he is entitled to a share of the net income accruing after he left for the service was not prompted by any understanding or agreement of the parties. His claim is admittedly prompted, at least in part, by what "I actually heard . . . specific doctors had done in St. Louis."

In October 1942, the parties were confronted by the grim circum-

stance of war; one was leaving at the call for military duty. The resumption of their joint professional endeavors was dependent upon the exigencies of the world conflict. The personal skill of plaintiff as a surgeon was to be lost to the joint advantage of the parties, certainly for a time, with no certainty it would ever be regained to their joint benefit. The evidence tends to show the parties contemplated the possible resumption of their joint practice at the end of the conflict, but their hopes in this respect must have been vague and uncertain.

It has been said the primary basis of a partnership is the intention of two or more competent parties manifested by a contract with each other to become partners by contributing their money, effects and skill, or some portion thereof, to a lawful business in the conduct of which each shall not only act for himself, but as the agent of all, and wherein each shall share to some extent in the profits and losses as such. Van Hoose v. Smith, 355 Mo. 799, 198 S. W. 2d 23; Dixon v. Dixon, Mo. Sup., 181 S. W. 84; Vol. 3, Kent's Commentaries, 14th Ed., p. 19. As in other contractual relations, the relation may be changed by agreement. 40 Am. Jur., Partnership, § 235, p. 292. Although there is a "dissolution," the partnership is not necessarily terminated immediately. There may be a kind of continued existence until all partnership debts are paid and assets collected and distributed in accordance with the agreement. Wilson v. Hoover, 342 Mo. 1182, 119 S. W. 2d 768. On the other hand, although the partnership is not dissolved, the partners can modify the partnership agreement so that a partner does not share in the income of the partnership for a time. Heilbron v. Stubblefield, Tex. Civ. App., 203 S. W. 2d 986; Kettlekamp v. Watkins, 70 Mont. 391, 225 P. 1003; Diehlmann v. Woller, 24 Pa. Dist. 673; 40 Am. Jur., Partnership, supra. Obviously, a clientele comes to a professional partnership more on account of confidence in the personal skill or learning of one or more of the partners than do the customers who patronize an association engaged in commercial pursuits. See Vol. 1, Rowley, Modern Law of Partnership, §331, p. 389. A modification of a partnership agreement (whereby a partner is not to share in the net income for awhile) would seem to be a reasonable one where, as in the instant case, a partner of a professional partnership is obliged to be absent from the practice for a time and so for the time is unable to perform his professional work in his own and in his partner's behalf. Compare Kettlekamp v. Watkins, supra; Heilbron v. Stubblefield, supra. And in the instant case such a modification of the partnership agreement was the more reasonable and natural because defendant was but a general practitioner and the income due to the specialized skill of plaintiff as a surgeon, during his absence, was to be lost to the firm. Such a modification, we believe from the evidence, was the intention of the parties when plaintiff went away.

Admittedly the relation of the parties-partners, between themselves, was a fiduciary one; but the instant case is not like the case of Schneider v. Schneider, 347 Mo. 102, 146 S. W. 2d 584, cited by plaintiff-appellant, wherein two partners of a business partnership had "wrongfully" excluded their third copartner; appropriated the firm's assests; and continued to operate the business by which conduct they became, as to the excluded partner, trustees ex maleficio, and so were obliged to account not only for the third of the firm's assets but also for the third of the net profits derived from the continuing business. In the instant case the parties had modified their partnership agreement as to the sharing of profits, and there is no evidence defendant appropriated the physical properties of the (professional) partnership to the exclusion of plaintiff or that defendant's conduct was inconsistent in the circumstances with a continuing and modified, or renewable partnership relation with plaintiff.

█ As stated, the parties stipulated the issues of division of physical or capital assets, and the plaintiff tendered the stipulated amount of cash ($1500) and property ██ in kind (an ophthalmology machine). The order dismissing plaintiff's petition as to the issues of dissolution and accounting for income was a correct one; but we believe the order and judgment of dismissal should be modified to order the payment and delivery of the tendered cash and property to plaintiff, and the trial court's order and judgment should be otherwise affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.