Glenn HUFFMAN, Plaintiff,

v.

Alvin BATES, Defendant, Wayne Waldo,
Receiver, Eva M. Raines,
Creditor-Appellant.

No. 7933.

Springfield Court of Appeals.
Missouri.

July 17, 1961.

Cohn & Lentz, Waynesville, for creditor appellant.

Wayne W. Waldo, receiver, pro se.

McDOWELL, Judge.

This appeal is from a judgment of the Circuit Court of Pulaski County, Missouri,

denying appellant's motion to be classified as a general creditor of the partnership, Bates Family Shoe Store, now in receivership and in process of liquidation.

Appellant's motion pleads that she is a creditor of the Bates Huffman Shoe Store; that she sold this store, including stock of merchandise and equipment to her minor son, Alvin W. Bates and Glenn Huffman, Jr., for $17,000; that there remains due on this sale $14,000.

The prayer is that the amount so due be paid out of the general fund when the receivership is liquidated; that she be treated as a general creditor and receive a pro rata share of said funds.

The cause was tried by the court July 25, 1960, and appellant's motion denied.

The testimony offered to support appellant's motion shows that in July or August, 1958, appellant was the owner of the Bates Shoe Store in Waynesville, Missouri, and made arrangements with Alvin Bates and Glenn Huffman, Jr., to sell it to them, including stock of merchandise and equipment, for the sum of $17,000. The actual stock of merchandise exceeded that sum at that time. Alvin Bates had no money to pay down on the purchase price and Huffman paid $2,000 in cash on his half interest thereof.

Appellant attempted to secure herself by having Huffman execute a note and chattel mortgage on his half of said merchandise and equipment for one-half of the purchase price less $2,000 down payment made by him, to wit, for $6,500, and by having her son, Alvin Bates, execute a note and chattel mortgage for $8,500 being his half of the purchase price. These notes and mortgages were dated September 1, 1958. However, the Bates mortgage was not acknowledged until November, 1958, and the Huffman mortgage was acknowledged December 8, 1958. Neither of the mortgages were filed for record until after the receivership of the partnership.

Appellant testified from the time of the original sale until the notes and mortgages were dated, Alvin Bates and Glenn Huffman, Jr., operated the store under an oral agreement with appellant to the effect that the original stock of shoes could be sold by the boys but the money realized from said sale, after the current operating expenses were paid and stock replenished, was to be paid to appellant on the purchase price. By this agreement the stock was not to be allowed to drop below $17,000; that during the period of time from the opening of operations by purchasers until the notes and mortgages were given in September, 1958, payments were made to the appellant from the sale of stock at various times by first one partner and then the other, which payments were credited to the partnership debt.

During the operation of this partnership shoes were purchased by Bates and Huffman from the general creditors with proceeds received from the sale of the original stock furnished by appellant.

Subsequently, on October 17, 1958, Alvin Bates, a minor, and Glenn Huffman, Jr., entered into a written partnership agreement and continued the operation of the business under the new agreement. This written agreement is in evidence as exhibit (A) and, in paragraph 3 thereof, it is stated:

"It is understood that the parties hereto each are "indebted to Eva M. Raines in different and individual amounts and that each is permitted to mortgage his interest in the said Bates Family Shoe Store and its assets to guarantee the payment of the amount so due Eva M. Raines."

On January 30, 1959, Huffman filed a petition in the Circuit Court of Pulaski County, Missouri, for dissolution of the partnership and asked for appointment of a receiver. On February 15, 1959, Wayne W. Waldo was appointed receiver by the court.

Appellant's testimony is that after the chattel mortgages and notes had been executed further payments on the original partnership obligation were made to appellant by each of the partners and credited on the joint obligation. No credits were endorsed on the notes given by each of the partners but appellant admits she was paid $1,000 on said indebtedness.

Each of the chattel mortgages given appellant by the partners recited therein that he was mortgaging "all my right, title and interest in and to an undivided one-half interest in and to assets of the Bates Family Shoe Store, * * *"

Appellant filed a motion in the Circuit Court to have all of the property restored to her, and, in this motion, she stated that the sale of the Bates Family Shoe Store to each of the partners was made September 1, 1958.

On June 5, 1959, appellant filed a suit in attachment on the note executed by Glenn Huffman to her, dated September 1, 1958, and secured by chattel mortgage on his one-half interest in said store. She testified this was done to prevent Huffman from buying the remaining stock of goods being sold by the receiver and disposing of the same.

It is admitted that the proceeds retained by the receiver would not be enough to pay all of the creditors of the partnership even if appellant's claim to be a general creditor is not allowed.

It is first contended by appellant that the trial court erred in excluding her claim as a general creditor for the reason that no partnership existed because Alvin Bates was at all times a minor and incompetent to enter into a valid partnership agreement, and, therefore, the appellant would be on the same footing as any other general creditor of the business since the other general creditors do not have a superior equity.

To support this contention appellant cites Van Hoose v. Smith, 355 Mo. 799, 198 S.W. 2d 23. On page 26 [2] of the opinion in 198 S.W.2d the court stated:

"It has been said that the most precise and comprehensive definition of a partnership is that of Chancellor Kent who defined a partnership as 'a contract of two or more competent persons to place their money, effect, labor, and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions.'"

There is nothing in this authority which says that a minor cannot enter into a contract of partnership.

Schneider v. Newmark, 359 Mo. 955, 224 S.W.2d 968 is cited. On page 971 [2–6] of 224 S.W.2d the court stated this law:

"It has been said the primary basis of a a partnership is the intention of two or more competent parties manifested by a contract with each other to become partners by contributing their money, effects and skill, or some portion thereof, to a lawful business in the conduct of which each shall not only act for himself, but as the agent of all, and wherein each shall share to some extent in the profits and losses as such." (See authorities cited.)

Again, this authority does not sustain appellant's contention that the partnership in question was invalid because one of the partners, Bates, was a minor.

68 C.J.S. Partnership § 5a, p. 408, is cited by appellant under this contention. Under this citation the law is stated:

"Since, as discussed supra § 3, partnership is a contractual relation, the parties must be competent to contract before they can enter into the partnership relation."

68 C.J.S. Partnership § 189a, p. 646, is cited. This citation contains this statement of law:

"* * * a creditor of an individual partner is not entitled to share in firm assets pro rata with firm creditors, and, as a general rule, has no right or equity to have

his debts paid out of firm assets as such, even though the partnership was originally formed for an illegal purpose."

Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co., 8 Cir., 80 F.2d 32, 39 [4(c)], 102 A.L.R. 688, is cited and states:

"It is a general rule that all unsecured creditors stand on the same basis, and as to them equality is equity. To warrant the enforcement of the claim of one creditor over those of another, there must be something in the intrinsic nature of such claim conferring an equity superior to that of the creditors over whom he claims a preference."

It is hard to understand why this authority is cited under appellant's first contention. The question presented by this contention is, was the partnership in question void because Bates was not a competent party, being a minor?

We discussed this question in Merrick v. Stephens, Mo.App., 337 S.W.2d 713, 717 [1–3] where we stated this law:

"Generally speaking, the contracts of an infant are voidable. 43 C.J.S. Infants § 71, p. 161 et seq. And the disaffirmance of the transaction in accordance with Section 442.080 RSMo 1949, V.A.M.S., under the general rule would render the mortgage void from the beginning. * * * One of them is that upon rescission the infant will be required to return and restore whatever he is able to return and restore as a price of his rescission." (See numerous authorities cited.)

■ In the instant case the facts show that Alvin Bates and Glenn Huffman, Jr., entered into a partnership agreement to operate a shoe business as a partnership. The written partnership agreement is in evidence and the testimony conclusively shows the parties operated under such agreement. This contract of partnership is not void as contended by appellant because Bates was a minor. Our courts have held that the con-

tract of a minor is voidable and that he, after reaching maturity, might rescind such contract. But until such rescission is made the contract of partnership is valid. We have held that this rule is for the protection of the minor. The contract may be a beneficial one to such minor, and, in that event, he can enforce his rights under the same but if the contract is not a beneficial one, he can rescind it. However, as we stated above, if he rescinds the contract he must return and restore whatever he is able to return and restore as a price of his rescission. We find against appellant under this contention.

Appellant's next contention is that the trial court erred in holding that the debt owed to appellant by each of the partners was an individual debt instead of a partnership debt for the reason that the evidence clearly shows that even though the partners, individually, executed a note and chattel mortgage in different amounts to the appellant for the payment of said purchase price, the intent of the partners and of the parties was to bind the partnership for the purchase price of the original stock of goods and that the proceeds from the sale of the original stock of goods were to be used to keep the stock in status quo and to pay off the purchase price.

■ Hensley v. Dormeyer, Mo.App., 102 S.W.2d 761 is cited. On page 763 [1], this law is stated:

"It is a well-settled principle of the law of contracts that the question of whether the several contracting parties have undertaken to bind themselves and each of them both jointly and severally, or whether they have merely undertaken to make the liability of each promisor individual and separate, is to be determined from the intention of the parties as the same may be manifested by the language used in the expression of the obligations created by the contract."

Under this alleged error it is appellant's contention that she is a creditor of the

partnership and not of each independent partner. She says that she was the sole owner of the Bates Shoe Store and of the fixtures and merchandise therein; that she entered into an oral agreement with Bates and Huffman that they could commence operating the business, sell out the stock on hand, provided they replaced it and made payments on the $17,000 obligation to her out of the profits from the sale of the stock; that pursuant to this oral agreement, Bates and Huffman sold shoes and merchandise from said store, replaced the stock with new stock purchased from creditors that are now seeking to bar appellant from sharing with them as a general creditor; that each of said partners made payments which were not credited on the notes but on the entire obligation of $17,000, total amount due her for her stock of goods; that even after the notes and chattel mortgages, in evidence, were made, the partners continued to pay her on such obligation. She contends that because Huffman had paid $2,000 and Bates had paid nothing on the purchase price, she necessarily had to take two separate notes secured by two separate chattel mortgages because of the interest of said partners in the business. From this evidence appellant contends that it was the intent of the parties that the indebtedness to appellant was a firm obligation and not individual obligations of the partners and that the obligation was to be paid from firm money and not individual assets of each of said partners. She contends that she could not be bound by the subsequent written partnership agreement between Bates and Huffman and that the original oral agreement between appellant and the partners for the payment of the obligation for the purchase price of said goods was binding.

Under § 512.160 [2] RSMo 1959,[1] it is provided: "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action."

In the instant case, by appellant's pleading, which is of record, she states that the sale of the original assets of the partnership were made by her to Bates and Huffman, September 1, 1958. She accepted notes of each of the partners, individually, secured by chattel mortgages on their undivided one-half interest in said merchandise purchased. These notes provided for payment of such indebtedness on the instalment plan of $100 per month. Why appellant did not place the mortgages on record is not explained, and, furthermore, the delay in having such mortgages acknowledged is not explained. Appellant says that she received payments before the date of the notes and mortgages given for the purchase price, but, it will be noted that said notes and mortgages were given for the entire purchase price. If appellant had received payments before the execution of the notes it would seem she would have reduced the amount due instead of taking notes for the original purchase price. The trial court further had evidence contained in the written agreement of partnership that each of the parties retain the right to execute to appellant security on their one-half interest in said merchandise to secure indebtedness from them to appellant. This would indicate that appellant's claim is an individual claim against each partner and not against the partnership.

The judgment of the trial court under this allegation of error will be affirmed.

The last alleged error is that the trial court erred in his application of the law to the facts. Appellant says that even if the trial court were correct in his ruling that the debts were individual debts of each partner to the appellant, the evidence clearly shows that appellant furnished the capital with which the firm commenced business and that the proceeds from the sale

1. Now V.A.M.R. Civil Rule 83.13.

of this capital were used to replenish the stock from the creditors of the partnership, and that under such circumstances and facts, in equity, the appellant is entitled to be paid out of the firm assets on an equal basis with other general creditors and, therefore, the trial court erred in rejecting evidence of appellant which conclusively showed these facts.

■ The law declared in 68 C.J.S. Partnership § 189, p. 646, is:

" * * * a creditor of an individual partner is not entitled to share in firm assets pro rata with firm creditors, and, as a general rule, has no right or equity to have his debts paid out of firm assets as such, * * * "

■ However, under § 189c, p. 647, this law is stated:

"An exception to the rule that individual creditors may, in equity, be paid out of firm assets only after firm creditors have been paid may arise where an equal or superior equity exists in favor of an individual creditor, as where the capital with which the firm did business was furnished by such creditor to one of the partners; and, where loans made to an individual partner are applied to the payment of firm debts, the lender has a right in equity to be subrogated, as against the firm assets, to the rights of the partnership creditors whose debts have been paid with his money."

■ Considering appellant's position under this alleged error we concede that appellant did furnish all of the original merchandise which constituted this partnership. However, appellant undertook to protect herself by taking notes and chattel mortgages on the share of each of the individual partners and failed in her duty to others to put these mortgages on record so as to inform those dealing with the partnership that appellant claimed an interest in the partnership assets. Thereafter, this partnership incurred indebtedness in an amount more than the assets of the partnership by buying goods and supplies for said business. Appellant admits that the agreement between these purchasers and herself was that the stock of goods should be kept at a value of more than $17,000, yet, so far as the record reveals, she stood by and let these partners dispose of all of the assets of the business until the partnership debts exceeded the stock of merchandise on hand.

■ There is no showing that any of the goods turned over to the receiver was a part of the original stock sold by appellant. It is unnecessary to cite authority that appellant's liens by virtue of chattel mortgages unrecorded did not constitute notice to other creditors and did not constitute a lien which would have priority over such creditors. Under the facts in this case appellant does not come under the exception to the general rule because she has an equal or superior equity as an individual creditor even though the capital with which the firm started business was furnished by her to each of the partners.

■ This being an equity case the court orders each party to pay its own costs. Section 514.060 RSMo 1959, V.A.M.S.;[2] Sitzes v. Raidt, Mo.App., 335 S.W.2d 690, 703 [10, 11]. Respondent-receiver's motion as to attorney fees is denied.

Judgment affirmed.

RUARK, J., concurs.

STONE, P. J., concurs in result.

2. Now V.A.M.R. Civil Rule 77.06.