Edward H. Cazel, Appellant, v. Joseph Alledine, Respondent, No. 41243 —226 S. W. (2d) 729.

Division One, February 13, 1950.

(1)

*Strop & Strop, C. F. Strop, Jr., Watkins & Watkins* and *O. W. Watkins, Jr.,* for appellant.

*Brown, Douglas & Brown* and *Richard L. Douglas* for respondent.

VAN OSDOL, C.—Action for dissolution of a partnership and for an accounting of profits since August 1, 1936. Plaintiff

claims 65% of such profits which, he contends, were in excess of $30,000. This court has appellate jurisdiction on the ground of the "amount in dispute." Section 3, Article V, Constitution of Missouri, 1945, Mo. R. S. A. Const., Art. V, § 3.

The decisive issue for consideration in the review of this action is—was the partnership dissolved by mutual agreement in 1936. Defendant had alleged the termination of the partnership upon stated terms pursuant to an agreement of the parties. The trial chancellor found there had been a complete termination of the partnership in August 1936, and a judgment for defendant was entered. Plaintiff has perfected this appeal.

Herein, plaintiff-appellant urges the partnership relation, existent prior to August 1, 1936, is presumed to have continued; and that defendant, who had alleged the termination of the partnership relation, had the burden of proof on the issue; and plaintiff-appellant further contends the finding for defendant was against the weight of the evidence, and not supported by the evidence.

It is admitted by defendant the partnership had existed. The partnership relation was for no definite duration, that is, the partnership agreement had fixed no definite period of time during which the partnership relation should continue—the partnership was one at will; and, though a partnership is or is not for a definite duration, since partnerships are formed by mutual agreement, the partners may, at any time, by mutual assent dissolve (modify or alter) their partnership relation by express agreement or by words and acts implying an intention to dissolve the partnership. Vol. 1, Rowley, Modern Law of Partnership, § 574, pp. 733-735; 40 Am. Jur., Partnership, § 235, p. 292; Schneider v. Newmark, 359 Mo. 955, 224 S. W. 2d 968. Defendant, having affirmatively raised the issue of dissolution of the partnership, had the burden of proof on the issue. Gerlach v. Huber, Mo. App., 256 S. W. 107; Walker v. Frierson, 180 Ala. 11, 60 So. 57; Vol. 2, Rowley, Modern Law of Partnership, § 724, p. 998.

In actions of an equitable nature we review the whole record, determine the weight of the evidence and reach our own conclusions as to the facts, giving due deference to the findings of the chancellor who personally saw the witnesses when they were on the witness stand, and heard them testify.

The Home Supply Market (groceries and meats) was established in St. Joseph in 1921 and was operated by plaintiff Cazel and one Swide as partners. Plaintiff purchased Swide's interest in 1927 and individually operated the market until 1933. Meanwhile, defendant Alledine had become plaintiff's employee and, between 1924 and 1933, had lent plaintiff money, $1000 of which was evidenced by a note of date July 9, 1928. In 1933, in consideration of de-

4

fendant's waiver of plaintiff's payment of his indebtedness to defendant (other than that evidenced by the note) and of defendant's payment of "a few hundred dollars" to plaintiff, plaintiff sold defendant a 35% interest in the business, and the parties continued the operation of the Home Supply Market as partners. Plaintiff and defendant had also acquired the shares of stock of Packers Market, Inc., St. Joseph, the parties respectively owning 65 and 35 per cent of the Packers Market corporate stock.

About the "middle of 1934," the parties began to deal in Kansas oil leases. The money used in the oil-lease transactions was drawn from the accounts of the two stores in St. Joseph. These transactions resulted in a loss of "close to $20,000"; ▮▮▮▮ so, in December 1935, the parties caused Packers Market, Inc., to contract to sell its business to The Beaty Retail Stores, Inc., and, contemporaneously with the contract to sell, plaintiff and defendant executed a covenant not to operate a grocery store or meat market for five years within a stated radius of St. Joseph, except that the operation of the Home Supply Market for six months following the execution of the agreement was permitted, or until such time as the Home Supply Market might be sold; but, should no sale be made of Home Supply Market within six months, The Beaty Retail Stores, Inc., was to have the option to buy the Home Supply Market, and in such event the Home Supply Market might continue operation until December 31, 1936. Here it may be stated, the Home Supply Market was not sold within six months of the date of the contract and covenant; and, in early January 1937, an arrangement was entered into whereby the negative covenant was waived and the business of Home Supply Market was continued.

The negotiations with The Beaty Retail Stores, Inc., consummating in the waiver of the covenant, were carried on by defendant, although plaintiff testified (and defendant denied) the negotiations were instituted at plaintiff's suggestion. The Home Supply Market was operated at a loss in 1936, but it seems, during the following years to and including 1946, the business yielded a profit greatly in excess of $30,000.

It is, of course, the position of plaintiff the operation of the business (Home Supply Market) was continued by him and defendant as partners; and it is the position of defendant the business was continued by himself as sole proprietor. As we have stated, defendant has alleged and contends the partnership had been dissolved in August 1936.

January 1, 1937, the net worth of Home Supply Market as shown by the ledger was $7322.28. According to defendant's testimony, the ledger did not reflect delinquent rents and unpaid wholesale accounts; and the item of $3034.11, carried on the ledger as "fixtures,"

was much in excess of the value of the fixtures. He further testified some of the accounts receivable (shown as assets) were uncollectible. According to defendant's testimony, the business was virtually insolvent in 1936.

In August 1936, plaintiff removed with his family to Wichita, Kansas. He no longer drew a salary or had a drawing account at the store. He came back to St. Joseph for brief visits, two to five times a year. But it could be reasonably inferred from plaintiff's testimony, the parties were to continue their operation of the Home Supply Market, as partners, with defendant in the active management of the business.

Plaintiff, prior to his removal to Kansas, withdrew the balance, $550, of a "special" partnership account; and there was evidence tending to show he collected $500 from a customer, Mason Sandwich Shop. Plaintiff, it is inferred, retained these amounts. Defendant, in detailing conversations had with plaintiff in August 1936, testified plaintiff "came to me and said there was not enough business for both of us here. He told me he got money from the bank, this $550 . . . and got a check from Mason Sandwich Shop for $500, and he said, 'I am leaving,' and I said, 'No, you stay here and I will leave myself,' and he said, '. . . you stay, pay the debt on the market and you can have it.' All the obligations that was against the market, I assumed . . . We owed quite a bit of money. That is the deal that was made with Cazel. He moved his family away, I think, the next day."

Plaintiff testified that, on several of the occasions when he visited St. Joseph, he asked defendant for an accounting; plaintiff did not request a written statement of the earnings; he asked defendant if "we" were making any money. It was defendant's testimony that plaintiff, after August 1936, did not ask for a statement of account, "or anything"; and that plaintiff never saw, nor did he ask to see the books of the store.

In 1939, a check of Home Supply Market for $300 was issued payable to plaintiff and, in 1937, an item of $5.59 was shown on the cashbook of the store as paid to or for plaintiff. And these two items were shown as income distributable to plaintiff on "partnership" income-tax returns signed by defendant for the stated years. Defendant also signed "partnership" income returns for other years to and including the year 1941. And he signed as "member of firm" certain reports, forwarded during the years 1937 to 1941, as required by the Missouri Unemployment Compensation Law. Defendant made the explanation that, although the income-tax returns showed the two stated items as income distributed to plaintiff, the income-tax returns and the reports were made out by an accountant, or by a bookkeeper at the store, who filling in the forms had assumed the

partnership relation had continued. Defendant stated he had relied on the accountant and a bookkeeper to prepare the returns and reports, and had signed the documents, in routine, without noticing the nature of the forms. Defendant testified the $300 check was in fact a loan to plaintiff, and the $5.59 item was for a bouquet or floral wreath bought at plaintiff's instance but paid for by defendant by a check drawn on the account of the store. As of December 17, 1936, the cashbook of the store shows a charge of $19 to the account of plaintiff. While the amount was paid for "insurance," the charge was not clearly explained.

Other evidence will be referred to in the course of the opinion.

The parties executed no written instrument evidencing an agreement to dissolve or modify the partnership relation; and, in determining whether the partnership was dissolved and the parties' interests settled (as between the parties) in August 1936, we must rely on the parties' shown conduct in the circumstances and upon irreconcilably conflicting verbal testimony of what was said and done by them relating to the partnership business. In the situation, it would seem obvious we must lean heavily upon the trial chancellor's judging of the credibility of the witnesses and of the weight and value of their testimony.

If the defendant's testimony is to be believed, in August 1936 plaintiff personally received $1050 of the partnership assets, and relinquished his interest in the partnership business and remaining assets in consideration of defendant individually assuming and undertaking to personally pay the partnership obligations—and the partnership was dissolved and terminated as the trial chancellor found.

As stated, at the time of the alleged dissolution the parties were bound by a covenant not to continue the Home Supply Market business after December 31, 1936. The business of the store was not profitable in 1936. According to defendant, the partnership business was then virtually insolvent. Plaintiff-appellant argues defendant's testimony tending to show dissolution is unreasonable. Plaintiff-appellant urges, "It is not reasonable to assume that a man who thought he only had between three and four months to operate, would assume the liabilities of an insolvent business and forgive a substantial indebtedness . . . in order to acquire complete ownership of the worthless business." Giving credence to defendant's testimony, he, a partner, assumed no more than he and plaintiff each were individually obligated to pay—defendant undertook to personally pay partnership obligations, to the payment of which (but for the alleged agreement) plaintiff might have been required to proportionately contribute. Wilson v. Hoover, 342 Mo. 1182, 119 S. W. 2d 768; Vol. 1, Rowley, Modern Law of Partnership, § 497, pp. 628-629. And the argument of plaintiff-appellant ignores a man's reasonable and

natural desire to press on in spite of adversity toward chosen final objectives.

Of course, defendant's signing of returns and reports, on forms appropriate for the returns and reports of a partnership or fiduciary, is considered by us, along with defendant's explanation that he had signed in routine without noticing the nature of the forms and in reliance upon the accountant or bookkeeper to make correct returns and reports on proper forms. In this connection, it was the testimony of the accountant the defendant did not tell him, until in 1942, that plaintiff had no interest in the business. There was also evidence tending to show defendant failed to disaffirm statements (of third persons made in defendant's presence in 1939 and 1941) to the effect that plaintiff had an interest in the store. However, the statements were not made in circumstances clearly showing a duty of defendant to speak up and deny the partnership relation existed.

A witness, formerly a representative of Dun & Bradstreet, Inc., testified plaintiff, in 1941 or 1942, had made a credit report listing an interest in the Home Supply Market. The witness further testified he interviewed defendant relating to plaintiff's credit report. Defendant, in testifying, stated he did not remember being told of the report. But, on cross-examination, the witness stated defendant had definitely said he was the sole owner of the business.

Prior to August 1936, plaintiff had been active in the business of the partnership. He had been in charge of the partnership books until about "the middle of 1934" when he became active in oil-lease transactions in Kansas—but, after his removal to Kansas in 1936, he returned to visit in St. Joseph only occasionally. On these occasions, throughout a period of nearly 10 years (this action was instituted August 22, 1946), plaintiff did not come to the store and examine the books and accounts of the Home Supply Market, nor did he ask for any written statement of the progress of the business and its profits (or losses), though he was throughout the time receiving no income from the store (except, according to his contention, the items of $5.59 and $300 in 1937 and 1939). His apparent lack of real concern relating to the store's condition and the progress of the business, and his failure to make insistent demand for a statement of the partnership business over such a period of time would not seem usual in one who asserts the ownership of a 65% interest in, and the right to 65% of the net profits of a store.

Having examined the entire record, we are constrained to the opinion the defendant's testimony tending to prove a dissolution is the more reasonable and worthy of belief when considered in the light of the shown acts and conduct of the parties in the shown circumstances. And we may the more confidently rule the case because

8

the trial chancellor, having seen and heard the parties testify, was of like opinion.

The judgment and decree should be affirmed. It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.