Charles A. BATES, Plaintiff-Appellant,

v.

Emma Mae MORRIS, Defendant-Respondent.

No. 33703.

St. Louis Court of Appeals, Missouri.

April 27, 1971.

Murray Stone, St. Louis, for plaintiff-appellant.

Wilson Gray, St. Louis, for defendant-respondent.

LYON ANDERSON, Special Commissioner.

This is an appeal by plaintiff Charles A. Bates from an adverse judgment of the Circuit Court of the City of St. Louis in an action against Emma Mae Morris. The suit was for dissolution of an alleged partnership and for an accounting.

The substance of the allegations of the petition upon which the case was tried was that the parties entered into a partnership agreement on September 6, 1968, to operate a shop under the name "Emma's Food Shop"; that plaintiff contributed $1,000.00 for his half interest, and an additional $550.00 for the purchase of merchandise; that on October 2, 1968, plaintiff notified defendant of his desire to dissolve the partnership and demanded the payment to him of all money due him; and that defendant was in charge of the partnership business, and was keeping all the money of the partnership without an accounting to plaintiff. The prayer of the petition was for dissolution of the partnership and for an accounting.

In her answer defendant denied that the parties entered into a partnership agreement to operate a confectionery or other type of business; denied that plaintiff contributed $1,000.00 into any partnership fund; and denied that plaintiff notified her that he desired to dissolve a partnership. It was further alleged that defendant had not rendered an accounting to plaintiff inasmuch as there was no partnership ever organized. It was then alleged that she met plaintiff early in 1968, and that thereafter on March 12 plaintiff moved into her home and lived with her as her husband until about September 12, 1968, during which time plaintiff was unemployed; that defendant supported plaintiff and bought clothing for him; that the total living costs amounted to $1,500.00;

that plaintiff and defendant purchased furniture at a cost in excess of $500.00 which defendant was compelled to pay; and that plaintiff is now living elsewhere, leaving bills of over $2,000.00 which she has had to pay. The prayer of the answer was that she be dismissed from the action with her costs.

Plaintiff testified that he met Mrs. Morris in February, 1968, and started living with her about March 28, 1968. They lived together as husband and wife. This relationship continued until some time in September, 1968. Shortly before discontinuing this relationship the parties contemplated the purchase of a confectionery business. This business was owned by Mr. and Mrs. Thornberry, and was located at 1631 North Sixteenth Street in the City of St. Louis. The business was purchased September 6, 1968. Plaintiff testified that he and Mrs. Morris bought the shop. The purchase price was $1,000.00. Plaintiff testified that Mrs. Morris said she did not have the money to pay her half of the purchase price. He further testified it was then agreed that if plaintiff would pay the full amount Mrs. Morris would later pay him her half of the purchase price. He further stated that it was agreed that each would receive a weekly salary, and at the end of the year they would divide the profits fifty-fifty. The purchase price was paid with a cashier's check which plaintiff delivered to Mrs. Thornberry. Plaintiff further testified that Mrs. Morris never gave him the $500.00 which was her part of the purchase of the confectionery equipment; and that he worked in the store after it was opened, but left because Mrs. Morris accused him of associating with other women, and threatened him with a gun on two or three occasions.

Mrs. Morris testified that neither she nor her son ever threatened plaintiff, or told him to stay away from the store, but he left of his own volition. She further testified that plaintiff could work at the store any time he desired.

Plaintiff testified that he told Mrs. Morris it would be best for her either to buy his interest in the store or sell her interest to him, but she refused to do either. Mrs. Morris testified there was no such discussion for the reason that plaintiff was supposed to have given her the store and because he did not want it.

Plaintiff testified that after being threatened he stayed away from the house and padlocked the store. Thereafter Mrs. Morris broke the padlock. Plaintiff further testified he did not go back to the store because he knew there would be trouble if he did.

Mrs. Morris testified she gave Mr. Bates $500.00 in cash at the time of the purchase of the confectionery. She received this money from several sources. She had been a patient at the Deaconess Hospital as a result of an accident in February, 1968. Thereafter she collected accident insurance in the total sum of $387.00. The balance came from rentals on property she owned. Mrs. Morris was employed at the time the confectionery store was purchased. She also testified that the $500.00 which Mr. Bates contributed to the purchase of the store was a gift to her, the reason being that he did not want any part of it. Mrs. Morris denied that the business was operated at the beginning as a partnership enterprise. Mrs. Morris testified: "Q When you came down to buy this business we're talking about, was there some discussion between you and him before this business was bought? A Yes, sir, it were. Q And what was the nature of that discussion? A That I wanted this confectionery and he wanted the tavern and he said that I could buy the confectionery but he didn't want no part of it because he wasn't going to confine himself down in it." He had consulted a lawyer about the purchase of a tavern. Mrs. Morris further testified that plaintiff at the time was "supposed" to be getting a tavern.

Vera Ward, daughter of Mr. and Mrs. Thornberry, testified that she was the person who prepared the sales receipt for the purchase money paid to the Thornberrys for the store. She stated that it included the names of Mr. Bates and Mrs. Morris, and that she did this at the request of both of them. Mrs. Morris testified she was at work at the time and had requested Mr. Bates to deliver the purchase money to the Thornberrys.

Mrs. Morris was asked if for tax purposes, in addition to the listing of "Emma's Food Shop", her name and that of Charles Bates were included. Her reply was that Mr. Bates listed it that way.

Mrs. Morris testified that Mr. Bates had just arrived in the city and was not employed when he started living with her; and that he did not have an automobile and when he secured employment with Shane Detective Agency she permitted him to use her car to go to and from the agency which was located in Clayton. She stated she would either ride the bus to work or call a cab for that purpose. She further testified that when Mr. Bates was not employed she bought the food and paid all the household expenses; and that when Mr. Bates did secure employment he told her he needed money to buy clothes, and she gave him $52.00 for that purpose.

Mr. Bates denied that Mrs. Morris supported him while they were living together, but stated that he gave her money every week. At the time of trial he was driving a truck for Dan Hamm. He stated he got this job on August 13, 1968, sometime after he quit working for Shane Detective Agency. Mr. Bates testified that sometimes his cousin would drive him to work; that more often he was taken there in a cab of Marcella Cab Company; but that he used the Morris car occasionally.

Plaintiff's first point is that the court erred in finding that the evidence on the issue of the existence of a partnership was

evenly divided and then rendering judgment for defendant, since the preponderance of the evidence supported plaintiff's contention that a partnership was in fact entered into by the parties. The trial court made no such finding but found for defendant and against the plaintiff on the issues presented in plaintiff's petition.

The question at issue between the parties was purely a matter of fact, being whether a partnership existed which should be dissolved and an accounting ordered. The burden of proof as to the existence of a partnership was on plaintiff. Baker v. Koontz, Mo.App., 13 S.W.2d 1085. If the plaintiff failed to successfully satisfy this requirement he would not be entitled to the other relief sought.

It is well settled law that on appeals in equity cases the appellate court tries the case de novo on the whole record, determines the weight of the evidence, and may render its own judgment on its view of the facts. It is also well settled that, when the oral testimony conflicts, the appellate court will give due regard to the findings of the trial court who personally saw the witnesses when they were on the witness stand and heard them testify. Cazel v. Alledine, 360 Mo. 1, 226 S.W.2d 729; Baker v. Koontz, supra; Better Business Bureau of Kansas City Advertising Club, Inc. v. Chappell, Mo.App., 307 S.W.2d 510; Peine v. Sater, Mo., 289 S.W.2d 101; Nixon v. Franklin, Mo., 289 S.W.2d 82.

Plaintiff, in support of his assignment that the court erred in rendering judgment for defendant, relies primarily on his testimony which we have heretofore set out and which if true was sufficient to show that a partnership agreement was entered into between the parties. But defendant testified to the contrary. Her testimony was that she contributed $500.00 of the purchase price of the store and that the $500.00 which Mr. Bates contributed was a gift to her. There was thus presented an issue of credibility which the court, by its judgment, resolved in favor of defendant.

Plaintiff also relies on the testimony of Mrs. Ward who stated that the bill of sale was made out in both names at their request. The defendant testified she was not present when the bill of sale was prepared but was at work at the time. Thus another issue of credibility was presented which was resolved in favor of defendant. The fact that for tax purposes the business, in addition to being listed as "Emma's Food Shop", contained the names of both plaintiff and defendant is not sufficient to prove that a partnership existed between the parties since it appears that it was Mr. Bates who listed it that way. The same is true with respect to the merchant's license. It cannot be concluded from this evidence, when considered along with all the facts and circumstances including defendant's explanation that the listings were made by plaintiff when she was not present, that defendant thereby consented to the operation of the business as a partnership venture. A more reasonable conclusion is that she considered the matter of no real significance.

Plaintiff's brief contains a statement that plaintiff's testimony that he worked in the store for a short time was uncontradicted. To the contrary, Mrs. Morris testified that plaintiff never worked at the store.

Having examined the entire record, we are of the opinion that plaintiff failed to prove that the confectionery store was a partnership operation. And we more confidently rule the issue because the trial judge, having seen and heard the witnesses testify, was of the same opinion.

Plaintiff's next complaint is that the court erred in not allowing plaintiff an accounting. Plaintiff's theory under this assignment is that a partnership existed which was dissolved either when Mr. Bates padlocked the store or thereafter when Mr.

Bates was threatened by Mrs. Morris and told not to come to the store. It is urged that under the law a partnership is not terminated upon its dissolution but continues until the partnership affairs are settled, which includes an accounting by the partner who carries on the business after dissolution. The error of this contention is that there was no partnership between the parties. Plaintiff in support of the theory advanced relies on the case of Pemberton v. Ladue Realty & Construction Co., 237 Mo.App. 971, 180 S.W.2d 766. That case lends no support to the theory advanced. In Pemberton plaintiff sought recovery against defendant for services rendered. The facts in the case, as developed by plaintiff's testimony, showed that the parties entered into a partnership or joint enterprise agreement with reference to the development of certain property. There was a judgment for plaintiff, and defendant appealed. This court reversed the judgment, holding that the plaintiff had an action at law for breach of contract, or that he might sue in equity for formal dissolution of the partnership and an accounting, but in no event was he entitled to an action in quantum meruit for services rendered his partner. In passing the court said that whether plaintiff should have a verdict in an action brought on a correct theory was not before the court.

The final assignment of error is that the court erred in not rendering a judgment in favor of plaintiff even though he saw fit not to dissolve the partnership and order an accounting. Plaintiff cites § 358.180, RSMo 1959, V.A.M.S., as an authority for recovery of his contribution to the partnership. The evidence shows that his contribution to the enterprise was a gift to Mrs. Morris. Even if he was a partner he was not entitled to money due him. He offered no evidence as to the financial status of the alleged partnership; he showed no profits earned; he failed to show the debts; he offered no evidence as to the value of the assets including the stock in trade, and no other evidence from which the court could have determined the amount, if any, he was entitled to recover.

It is our opinion that the judgment of the trial court should be, and is in all respects, affirmed.

PER CURIAM:

The foregoing opinion of LYON ANDERSON, Special Commissioner, is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.