EARL VAN HOOSE v. FORREST SMITH, State Auditor of the State of Missouri, Appellant.—No. 39918.—198 S. W. (2d) 23.

Division One, December 9, 1946.

*J. E. Taylor,* Attorney General, *Tyre W. Burton* and *Will F. Berry, Jr.,* Assistant Attorneys General, for appellant.

800

*Roy Coyne* for respondent.

BRADLEY, C.—This cause involves the validity as to respondent of an additional sales tax assessment made by the appellant against respondent and Woodrow Glosser on the theory that they operated a used car business as partners under the name of Glosser Motor Company at Joplin, Missouri. The assessment, penalty and interest

amount to $4,971.62, but the appeal is to the supreme court because a state officer as such is a party. See Sec. 3, Art. V, Constitution.

Respondent was given notice of the additional assessment and filed with appellant a verified denial of the partnership. Appellant seems to have considered the denial of partnership as a petition for reassessment under Sec. 11428, Laws 1943, p. 1022, and under Sec. 11422, Laws 1943, p. 1021, appointed an employee in his office as a Commissioner to conduct a hearing in order "to decide the issues raised by the petitioner (respondent) for reassessment; to ascertain the correctness of the additional assessment heretofore made; to determine the amount of the additional tax due . . . and to duly make his finding of facts, together with his conclusions, and make a report of the same in writing." Notice of the hearing before the commissioner was given respondent and in response thereto he, with ▉ counsel, appeared at the hearing; participated therein, but did not testify.

At the hearing in Joplin before the commissioner the only question considered was the question of partnership, and the commissioner found that the partnership existed; so reported to appellant who approved the report and the additional assessment became final. Respondent thereupon brought certiorari proceedings in the circuit court to quash the additional assessment against him. See Sec. 11445, Laws 1943, p. 1026. Upon issue of the writ appellant filed return; the additional assessment as to respondent was quashed and this appeal followed.

Appellant contends that the evidence as to partnership, taken at the hearing before the commissioner, was sufficient to make a prima facie case and that since respondent failed to offer any evidence to the contrary, he failed to overcome the prima facie case, and that such being so, the trial court should have quashed the writ of certiorari and entered judgment as provided in Sec. 11445, Laws 1943, p. 1027. Respondent contends that the proceedings before the commissioner were unauthorized and therefore a nullity and that the evidence was not sufficient to establish a partnership.

▉ If the proceedings before the commissioner were unauthorized and a nullity as respondent contends, then that ends the argument, and we will first rule that question. The document filed with appellant by respondent and termed "denial of partnership" follows: "Comes now Earl Van Hoose, one of the parties being charged as a partner by Forrest Smith, State Auditor, pertaining to the assessment for sales tax, and denies each and every allegation contained in the assessment for sales tax, dated May 17, 1945, and upon being duly sworn upon his oath the said Earl Van Hoose denies that he ever was a partner with Woodrow Glosser under the firm name of Glosser Motor Company or any other name whatever, and expressly denies that he ever was or now is a partner with Woodrow Glosser

under any name whatever, and denies that he owes any sales tax to the State of Missouri.''

While respondent did not specifically ask for a reassessment, appellant, as stated, proceeded as though such had been asked for and served notice of a hearing for that purpose, and respondent, as stated, appeared at the hearing and participated therein. It is true that at the hearing the correctness of the tax as to amount was not considered, but the *correctness* of the assessment *against* respondent was considered and determined. It is stated in respondent's brief that the proceedings before the commissioner constituted ''a clear violation of a citizen's rights under the Constitution of this state'', but our attention is not directed to any provision of the Constitution that is violated. A hearing before the State Auditor on a question of partnership is not specifically provided for in Sec. 11428, or any other section, but it will be noted that by Sec. 11422, Laws 1943, p. 1021, referred to supra, appellant's designate, the commissioner, was authorized to ''determine the amount of tax due'' from respondent. The denial of partnership, in effect, was a denial that any tax was due from respondent, besides, respondent specifiically denied that he owed any tax, hence the question of partnership was a proper one for consideration by the commissioner. We rule that the proceedings before the commisioner were authorized and proper.

■ Does the evidence make a prima facie case of partnership? The Glosser Motor Company operated a garage and also engaged in the sale of used cars. The additional tax assessed accrued in the conduct of the business from January 1, 1943, to February 28, 1945. Glosser was called and testified as a witness for appellant as follows:

''I live in Joplin and from January 1, 1943 to February 28, 1945, I conducted a garage and used car business. During that period I had business relations with Mr. Van Hoose. He furnished the money to buy the used cars which were sold. This relationship started about the middle of 1941. I fixed the price and did the selling of the used cars, but sometimes he had a prospect and would send him over. I considered the cars bought his cars because ▇ he paid for them and if I sold them *he got half the profit*. When I bought a car I would give his check in payment or write a check on my own account. If I repaired a car *he stood 50 percent of all expense*. Q. As I understand it, all of your expenses were added into your sales price, and then you split your profits. A. Yes; everything that we were partners, we were in together. The expenses were added in on the cost of the cars. I borrowed money personally from him and paid interest on that, but on the cars we bought together I paid no interest. *We just split the profits*. The dealer's license to operate was added in on expense, and Mr. Van Hoose paid half of that. *The profits and losses were handled on the 50 percent basis*. I did not sign any notes or mortgages to him in connection with the operation of this business.

Mr. Van Hoose and I discontinued this mode of operation April 10, 1945. There were 20 cars at that time and I turned these over to him. At the time he took these cars we had no settlement. Our business relation was terminated rather suddenly. He started taking cars off about 11 o'clock at night; I had no notice. He made no demand on me for any money he claimed to have loaned me in this business."

On cross-examination Glosser testified: "When I wanted to buy a car to sell I would get the money from Mr. Van Hoose; most of the time I would. If I didn't have the money in the bank why he had the money, and I would write a check on my account and get the money later (from respondent). I did not give him any note for the money, but I would bring the title over and give him the title. I had a few cars of my own, bought and paid for with my own money. These were the floor planned cars. Mr. Van Hoose did not have authority to write checks on my account; that was not a joint account. He did not have any right to fire the employees at my garage. I paid my employees out of my own checking account. I own the lot (used car lot as we understand) and I never charged him any rent on the lot. As to the 20 cars that Mr. Van Hoose got (when their relationship terminated), he paid for all of them except four floor planned with a finance company and maybe one or two at the bank. He was accommodation maker on the note for the cars on the floor plan. Q. There were 3 floor planned and 17 belonged to Van Hoose, is that right? A. Yes. Q. And on the floor plan mortgages, those 3 that were floor planned, have you ever paid anything on these notes? A. No, he just took the cars. His name did not appear on my stationery, and in my application for dealer's license I did not state that Mr. Van Hoose was interested in the business. When I sold a car purchased with money obtained from him I gave him 50 percent of it. No one has ever made any demand on me to pay anything for those three cars. I never gave Mr. Van Hoose anything on the cars that I owned and sold. Mr. Van Hoose was in the automobile business before these transactions took place, and he runs a finance business in Webb City. Q. Now, Mr. Van Hoose would handle the paper on those cars; if I would come over and want to buy a $1,000 car, and want to pay $500 down and borrow $500 on it, why, Van Hoose would handle the paper on it, wouldn't he? A. Most of them he would. Q. Have you had other companies handle paper besides him? A. Yes." (Italics ours).

It has been said that the most precise and comprehensive definition of a partnership is that of Chancellor Kent who defined a partnership as "a contract of two or more competent persons to place their money, effect, labor, and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." 3 Kent's Comm. (14th Ed.), star p. 24; 40 Am. Jur., p. 126, Sec. 2; 47 C. J., p. 640, Sec. 1; Dixon v. Dixon (Mo Sup.),

181 S. W. 84, l. c. 86; Stundon v. Dahlenberg, 184 Mo. App. 381, 171 S. W. 37.

Perhaps no definition of the term *partnership* could be framed that would be all comprehensive. When the question of partnership or no partnership arises, it must be answered from the facts presented, but "participation in the profits and losses of a joint business or undertaking affords the usual, and, perhaps, the most cogent test of the existence of an intention to form a partnership. An agreement for such participation is not, however, a conclusive test, and does not absolutely constitute a partnership as a conclusion of law, if other circumstances show that no partnership was intended. It is only prima facie proof which may be rebutted by evidence of other facts and circumstances." Torbert v. Jeffrey, 161 Mo. 645, l. c. 654, 655, 61 S. W. 823, and cases there cited.

"When one party contributes the capital and the other the labor, skill or experience for carrying on a joint enterprise, such a combination constitutes a partnership unless something appears to indicate the absence of a joint ownership of the business and profits." State ex rel. Jones et al. v. Daues et al., 321 Mo. 910, 13 S. W. (2d) 537, l. c. 539, 540. However, it is not sufficient to create a partnership that the parties were to share the profits of a given enterprise or transaction. They must also have agreed, that is, intended to share the losses and to become partners. National Bank of Commerce v. Francis, 296 Mo. 169, 246 S. W. 326, l. c. 332.

 Respondent makes the point that a partnership cannot be established by declarations or admissions of one of the alleged partners, citing Pryor v. Kopp, 342 Mo. 887, 119 S. W. (2d) 228; Prasse v. Prasse (Mo. Sup.), 77 S. W. (2d) 1001. It is true that a partnership may not be established alone by declarations and admissions of one of the alleged partners, but such declarations and admissions have corroborative value, as is ruled in the Pryor case. It is there said [119 S. W. (2d) l. c. 234]: "We do not agree with appellant that such admissions (as to partnership) have no corroborative value. . . . 'It is clear that before one partner can be charged with the admission of another, the partnership relation must be shown—and that by other evidence than the admission itself. . . . The admission, per se, can be received only to affect the person making it. It becomes admissible against the partnership as such or against other partners, only upon such proof of the relationship as makes plain the probative connection.' Jones Commentaries on Evidence (2d Ed.), Sec. 935, p. 1726."

Glosser's evidence as to the relation between him and respondent could not be classed as mere declaration or admission. In 47 C. J., p. 721, Sec. 127, it is stated: "Ordinarily, however, the admission by one partner of the existence of a partnership cannot be given in evidence against an alleged partnership unless made in the latter's

presence or unless the latter authorized or assented to the admission or has adopted or ratified it, the rule of exclusion extending to pleadings by the parties. Nor is the declaration made admissible by the fact that it was made after dissolution of the partnership. But the statement of one party made in the presence of another and not denied by him that the latter is a partner is properly admissible as evidence tending to show a partnership, and testimony at the trial by one partner that another is a member of the firm is admissible, such testimony not being a declaration within the meaning of the rule.''

We think Glosser's evidence makes a prima facie case on the question of partnership, and there being nothing to the contrary, there was no evidence to support the trial court's judgment quashing the assessment as to respondent. The judgment should be reversed and the cause remanded with directions to set aside such judgment and enter judgment quashing the writ, and also enter judgment against respondent for the tax, penalty and interest, a total of $4,971.62. See Sec. 11445, Laws 1943, p. 1027.

It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.