Frank PIGG, Respondent,

v.

Jack L. BRIDGES and Farmers Insurance Exchange, Appellants.

No. 48099.

Supreme Court of Missouri,

En Banc.

Dec. 11, 1961.

Roy F. Carter, Kansas City (Sprinkle, Carter, Sprinkle & Larson, Kansas City, of counsel), for appellant Farmers Ins. Exchange.

Richard H. Heilbron, Kansas City, for appellant Jack L. Bridges.

Gore & Hepburn, Homer A. Cope and Donald W. Browne, and Walter A. Raymond, Kansas City (Raymond, West & Cochrane, Kansas City, of counsel), for respondent.

HOLLINGSWORTH, Judge.

Inability of the judges of Division One to reach a majority decision in this case caused it to be transferred to Court En Banc. Supplemental briefs were then filed and the case was again argued and finally submitted. Portions of an opinion considered in Division will be incorporated herein without the use of quotation marks.

On June 11, 1952, certain insurance associations and exchanges, known as "Farmers Insurance Group", hereinafter referred to as "Farmers", by written contract effective June 1, 1952, appointed defendant Jack L. Bridges as their "district agent" in charge of their newly established District 23. On June 21, 1952, a formal opening of their new district office in Clinton, Missouri, was held, to which the general public was invited. During the reception held on that occasion, plaintiff, an invitee, fell down a stairway leading into the cellar of the building in which the office was located as he sought entrance to a toilet to which he had been directed by defendant Bridges. This action for $75,000 damages ensued. Verdict and judgment went for defendants. Thereafter, plaintiff was granted a new trial on grounds that the court erred in giving Instructions 8 and 9. Both defendants appealed from that order. Farmers also contends that the trial court erred in failing to direct a verdict in its behalf on grounds the evidence showed as a matter of law that the relationship of Bridges to Farmers was that of an independent contractor.

At trial, plaintiff proceeded upon the theory of Farmers' liability for the alleged negligence of Bridges under the doctrine of respondeat superior and the trial court, at plaintiff's instance, submitted the case under an instruction embodying that theory.

The case was likewise so briefed and argued in this court in Division One. Upon transfer to Court En Banc, however, plaintiff has insisted that, irrespective of whether a master and servant relationship existed between defendants, the evidence unquestionably presents a clearly submissible issue of Farmers' liability for the injuries sustained by plaintiff while attending the formal opening. That contention proceeds upon the theory that Farmers and Bridges conducted the formal opening of the district office as joint adventurers and as such invited the public, including plaintiff, to attend said opening, which placed upon both joint adventurers the duty to exercise reasonable care to make the premises safe for their invitees; and that Farmers is, therefore, liable as a joint tortfeasor for any injury negligently inflicted upon plaintiff as a result of an unsafe condition of the premises wherein the formal opening was held.

Consideration of defendants' contention that the trial court erred in granting plaintiff a new trial on grounds that it had erred in the giving of Instructions 8 and 9 requires a statement of the evidence upon which those instructions were based. A solid floor-to-ceiling partition divided the office part of the district agency premises from the "back room". There was an opening in the partition. In the southeast corner of the back room was a rest room, the door to which faced west. One walking from the office through the partition opening to the back room could continue in a direct line to the rest-room door. To one's left just a step or two before he reached the rest-room door was another door to the cellar stairway. That door faced south and opened inwardly. There were no signs on either door and no directional signs indicating the respective locations of the rest room and the cellar stairs. There were no artificial lights on at the time of the casualty and the evidence varied as to how light or dark it was in the back room.

Plaintiff arrived at the district office about noon and immediately inquired as to the location of the rest room. Mr. Bridges' answered "right on back" and pointed to the opening in the partition. Plaintiff walked through the opening into the back room and toward the southeast corner. He saw a door, grasped its knob, pushed, "stepped into a hole" and remembered nothing more until he found himself at the bottom of the cellar steps.

Defendants' verdict-directing, contributory negligence Instruction 8 was: "The Court instructs the jury that the plaintiff was required by law, while on defendant Bridges premises, to exercise ordinary care for his own safety; that is, such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances. You are further instructed that failure on the part of plaintiff to use ordinary care for his own safety constitutes negligence as that term is used in these instructions, so therefore, if you find and believe from the evidence that the plaintiff went into the back room of the building mentioned in evidence to go to the rest room, and if you find that the plaintiff opened the door to the stairway to the basement and stepped into said stairway without looking, *and if you find that by looking he could have discovered said stairway, and if you find that he stepped into the doorway and into said stairway at a time when he could not ascertain what the said doorway led to,* and if you find that in the exercise of ordinary care he could have seen the other doorway that led into the rest room, and if you find that he failed to do so, and if you find that such actions on the part of the plaintiff was a failure to exercise ordinary care as hereinbefore defined, then you are instructed that the plaintiff was guilty of negligence and if you find that such negligence directly contributed to cause plaintiff's injuries, if any, then you are instructed that you cannot find for the plaintiff and your verdict must be for the defendants and this is so even though you may find that the defendants were negligent as set out in other instructions." (Our italics.)

■ It is apparent that the italicized portion of the foregoing instruction hypothesized in the conjunctive two directly contradictory findings of fact. The instruction in unmistakable language required the jury to find that by looking plaintiff *could have discovered the stairway* and that at the same time he *could not have discovered the stairway*. There was evidence supporting each hypothesis, i. e., that in the exercise of ordinary care plaintiff could have and could not have discovered the stairway, and defendants were entitled to disjunctively submit that in the exercise of ordinary care plaintiff could have discovered the stairway, or (if the jury believed plaintiff's evidence as to lack of light) that plaintiff negligently stepped through the doorway at a time when it was so dark he could not have discovered the stairway. It needs no argument, however, to demonstrate that, submitted conjunctively, the two inconsistent contradictory findings of Instruction 8 required the jury to find two facts which could not coexist. Such direction amounted to misdirection under which a jury properly could not perform its function and the instruction was therefore prejudicially erroneous. See Thomas v. Kimsey, Mo., 322 S.W.2d 754, 758[4].

Instruction 9 was: "The Court instructs the jury that there was no duty on defendant Bridges to warn the plaintiff of the presence of the cellar stairs mentioned in evidence if, in the exercise of ordinary care for his own safety, the presence and location of said stairs was apparent to plaintiff himself."

■ Plaintiff's sole contention as to that instruction is that there was no substantial evidence that the presence of the cellar steps "was apparent" to one in the exercise of ordinary care. We do not agree. There was unequivocal testimony that under the conditions as to light as they existed at the time of the casualty, one could see the stairs. It follows that there was substantial evidence to support the hypothesis of Instruction 9 that there was sufficient light in the back room for one in the exercise of ordinary care to have discovered the location and presence of the stairs.

Farmers' contention that Bridges was an independent contractor and that Farmers, therefore, is not liable for his negligence under the doctrine of respondeat superior is based in large measure upon the provisions of its original contract with Bridges. That contract, insofar as here material, provides that Farmers shall pay Bridges on the basis of commissions for the business produced by him and for the settlement of claims. In consideration therefor, Bridges agreed actively to represent Farmers and to produce a satisfactory amount of business acceptable to its exchanges and to represent no other insurer without written consent; to conform to the regulations of Farmers Exchanges and diligently provide claims and other service to policyholders and train local agents; to maintain adequate records of the business transacted available for audit and review by the Exchanges; to surrender on demand records and other material having to do with Farmers' business; and to maintain telephone service under the name of the Exchanges; and further:

"Nothing contained herein is intended or shall be construed to create the relationship of employer and employee. The time to be expended by the District Agent is solely within his own discretion so long as the quota required is maintained and the persons to be solicited and the areas within the district involved wherein solicitation shall be conducted are at the election of the District Agent. No control is intended to be exercised by the Associations over the time when, the place where or the manner in which the District Agent shall operate in carrying out the objectives of this agreement, provided only that they conform to normal good business practice."

We think the provisions of that contract are not decisive of the relationship existing between Farmers and Bridges in the staging of the formal opening of the district office on June 21, at which plaintiff was injured. That contract contains no reference whatever to the opening of a district office or to a custom of Farmers, working in conjunction with the district agent, of holding formal openings of district agency offices to which the general public was invited. The evidence adduced in that regard is of importance.

Prior to appointment as district agent, Bridges was an employee in the policy service department in Farmers' Kansas City office. Robert L. Anderson was and since 1948 had been Farmers' state agent in charge of all of the agencies herein mentioned. It was his duty to establish new districts, appoint district and local agents, and exercise direct supervision over such districts and agencies in the production of new policyholders and the servicing of old ones. By letter bearing date of February 19, 1952, Farmers ordered Anderson to consolidate three existing district agencies into a new district with its office at Clinton and advised him that Bridges had been released to accept appointment as district agent in charge thereof. In conformity with that order Anderson caused Bridges to seek out an office in Clinton, which Bridges did. Thereupon, in accordance with Farmers' policy to approve or reject any office chosen by a district agent, Anderson, accompanied by Bridges, inspected the location and exterior and interior of the building and approved it. Had he not been satisfied with it, he would have directed Bridges to seek another. The purpose of the custom of Farmers to hold open house when a new district office was opened was to create good will for Farmers by making the public acquainted with the location of the office and the personnel in charge of its office. Various means were used in conducting that affair. Food and refreshments were served, door prizes given, to qualify for which the invitees were asked to sign cards giving their names, mailing addresses; insurance policy expiration dates, etc. This procedure gave Farmers and its agents valuable leads for future solicitation of insurance contracts. Anderson advised Bridges that Farmers had a regular form of "ad" publicizing the formal opening and inviting the public to attend that was usually placed in the newspapers. Such an advertisement was run in The Clinton Eye, the cost of which was divided between Farmers and Bridges.

That advertisement carries the heading "FORMAL OPENING!" On the left side and below those words is a picture of Bridges, with an announcement of his appointment as district agent for the "Farmers Insurance Group", followed by a listing of Farmers' companies, to wit: Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange. Below the names of those companies, there appear the words: "He is prepared to furnish complete information about FARMERS INSURANCE GROUP policies. Write, telephone or call in person for complete information." On the right side of the advertisement there appears the date of Saturday, June 21, followed by a list of the free prizes to be given and an invitation from Jack L. Bridges, as district agent of Farmers, and his secretary to "Be Our Guest". Below that wording is a picture of the front of the new office. The front consists of an entrance door and a large plate-glass window. Upon the window are painted the words "District Sales & Claims Office", followed by the words "Farmers Insurance Group" as they are arranged and adorned in Farmers' official insignia; and under that insignia the words "Jack L. Bridges, District Agent". Across the bottom of the window are the words: "Automobile Truck Liability Fire". In extra large block letters above the plate-glass window are the words "Farmers Insurance Group". Suspended horizontally from the wall and hanging above the entrance door is a sign in the form of the official insignia of "Farmers Insurance

Group". (Its installation was suggested by Farmers; Farmers also furnished the officially adorned insignia for the window and furnished Farmers' signs for policyholders' automobiles.)

On the day of that opening, Anderson, in his official capacity as Farmers' State Agent, was present. He brought plaintiff with him as an invitee of Farmers. Plaintiff formerly had been a state agent in Kansas for Farmers and Anderson thought plaintiff's presence would add prestige to the opening. Upon their entry into the office Anderson introduced plaintiff to Bridges. It was shortly thereafter that, upon inquiry of plaintiff, Bridges directed him to the toilet.

Farmers concedes that its liability for negligence of Bridges in causing injury to plaintiff must be determined upon its relationship to Bridges at the very time the negligent act or acts were committed. See Reiling v. Missouri Insurance Co., 236 Mo. App. 164, 153 S.W.2d 79, 84 [6]; Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 255, 116 A.L.R. 1381. On this appeal neither defendant questions the sufficiency of the evidence to support a finding that plaintiff's injuries were the direct result of the negligence hypothesized in plaintiff's verdict-directing Instruction No. 1. Consequently, the answer to the question of Farmers' liability for that negligence depends upon whether Farmers *jointly with Bridges* owed plaintiff a duty to exercise ordinary care to provide reasonably safe facilities maintained or proffered for the use of persons invited to the formal opening of Farmers' district offices.

[redacted] Although there seems to be no all-inclusive definition of the term "joint adventure", it is often defined as an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge. Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562, 571; State ex rel. McCrory v. Bland, 355 Mo. 706, 197 S.W.2d 669, 672, 168 A.L.R. 929; Scott v. Kempland, Mo., 264 S.W.2d 349, 354; 48 C.J.S. Joint Adventures § 1, pp. 801–802. A corporation may engage in a joint adventure the purpose of which is within its corporate powers. Hobart-Lee Tie Co. v. Grodsky, 329 Mo. 706, 46 S.W.2d 859, 862. Joint adventures arise out of contract, but may be established without specific formal agreement and may be implied or proved by facts and circumstances showing such a relationship was in fact created. There need not necessarily be an agreement to share losses. There must be, however, some control over the subject matter thereof or property engaged therein. State ex rel. McCrory v. Bland, supra, 197 S.W.2d l. c. 672. "With respect to a joint adventure involving the control and operation of premises or places, or the use of mechanical contrivances, all joint adventurers are liable for personal injuries suffered by others from negligence in the maintenance, installation, or operation of such premises, places or contrivances, including instances in which the actual negligence is that of some, but not all, members of the joint adventure, or in which the actual negligence is that of agents and employees of the joint adventurers, acting within the scope of their employment; and there is joint liability in this regard." 48 C.J.S., Joint Adventures, § 14, p. 870. See also James v. Berry, Mo.App., 301 S.W.2d 530, 531.

[redacted]

[redacted] We are convinced that the evidence above narrated would support a finding that Farmers and Bridges were engaged and actively participating in a joint adventure in conducting the formal opening of the district office at which plaintiff was injured. The signs placed upon the front of the office with the knowledge of Farmers clearly reflect that whatever may have been Bridges' status as an employee of Farmers, the office was opened, advertised and maintained primarily and essentially as Farmers' district office in charge of Bridges *as Farmers' district agent* and that the general public was invited there primarily and essentially to induce the public to do business

with Farmers viz: through Farmers, district agent to buy, renew, pay for and adjust claims accruing under *Farmers' policies*. We are also convinced that the acts and conduct of Bridges and Farmers, acting through its state agent, Anderson, in planning, advertising, participating in and sharing certain expense of the formal opening of the district office warrant a finding that Farmers and Bridges were active participants as joint adventurers in carrying it out for the profit of both Farmers and Bridges; and that persons accepting the invitation extended to the public to attend such formal opening were invitees not only of defendant Bridges but of Farmers as well.

■ Assuming such a finding by the jury, Farmers and Bridges are liable to plaintiff for injuries sustained by him as a direct result of any unsafe condition of the premises to which he was invited, if such condition was known or, in the exercise of ordinary care, should have been known to Bridges or Farmers or both and, in the exercise of ordinary care, was not known to plaintiff. Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410, 415; Oliver v. Oakwood Country Club, Mo., 245 S.W.2d 37, 41; Hartmann v. St. Louis-San Francisco Ry. Co., Mo.App., 280 S.W.2d 442, 446.

■ By reason of the premises it is our conclusion that the order of the trial court granting a new trial should be affirmed and the cause remanded for new trial on the grounds herein discussed. In so holding, we have not overlooked the fact that on submission of this case in Division One, plaintiff in responding to Farmers' challenge to submissibility of the case against it under the doctrine of respondeat superior, did not brief his present contention that the case was submissible against Farmers on the theory of its liability as a joint adventurer with Bridges in staging the formal opening. However, in any event, we think that upon transfer to Court En Banc plaintiff, as respondent, under the circumstances here shown had the right to brief defendants' liability under the latter theory and to seek remand for trial upon that theory. See Martin v. Southwestern Bell Telephone Co., 344 Mo. 83, 125 S.W.2d 19, 20. The question of the precise legal relationship between Bridges and Farmers as employee and employer is difficult; as stated, the judges in Division One were unable to agree upon it. Hence, plaintiff being confronted with that situation should not now be precluded from a trial of his case upon another theory which, under the evidence, makes a submissible case against both defendants. Under circumstances fairly analogous to those here shown, it is frequently said: " 'The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had.' " Reece v. Reed, Mo., 326 S.W.2d 67, 72. (For exceptions to this rule, not applicable here, see Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692.) We have, therefore, concluded that in the exercise of sound discretion the order granting plaintiff a new trial should be affirmed, to the end that the petition, if necessary, may be amended and the case tried upon the theory of joint adventure herein discussed.

All concur.