Hallard HEALD, (Plaintiff) Respondent,

v.

Nick ERGANIAN and Rose Erganian,
(Defendants) Appellants.

No. 49838.

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

Motion for Rehearing or Transfer
to Court En Banc Denied
April 13, 1964.

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellants.

Merrill M. Steeb, St. Joseph, for respondent.

DALTON, Judge.

Action in equity to quiet and determine title to described real estate in the City of St. Joseph, Buchanan County, Missouri, and for partition, with a counterclaim by the defendants for goods sold and delivered to plaintiff. The two counts of the petition and also the counterclaim were tried to the court in one proceeding and the court found that plaintiff Hallard Heald and Nick Erganian were each the owners of an undivided one-half interest in and to the described property; that the property was subject to certain liens in favor of defendant Nick Erganian for purchase money furnished; and that plaintiff was indebted to defendants in the sum of $257.60 on the counterclaim for goods purchased from defendants. The court found that the property could not "be equitably divided between the parties in kind without a sale" and ordered a sale in partition and a division of the proceeds in accordance with the court's decree. Defendants filed a motion for a new trial, which was overruled and they have appealed.

■ This court has jurisdiction of the appeal since the decree determined title adversely to defendants (husband and wife) who claimed ownership of the described property and denied that plaintiff had any

interest therein. State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S.W.2d 544, 545; Ray v. Nethery, Mo.Sup., 255 S.W. 2d 817, 819 [2].

The subject matter of the action to quiet title consisted of six particularly described lots located in the City of St. Joseph. Four of the lots are referred to as the "used car lots" and were located at the intersection of Lake and Colorado Streets. The other two lots are referred to as adjoining or near the Erganian store.

It was admitted that the "used car lots" had been conveyed to the defendants (husband and wife) by John E. and Alice A. Smith in August, 1960; and that the two lots adjoining the store had been conveyed to defendants by a deed "regular in all respects" executed by the Cramer heirs.

Plaintiff alleged that he had entered into an oral contract with Nick Erganian for the purchase and sale of the described real estate, which contract had been repudiated by defendants and that plaintiff was the owner of a one-half interest in the described property subject to certain purchase money liens, as hereinafter stated. The petition described the relationship existing between the parties resulting from the alleged oral agreement and the subsequent conduct of the parties as a joint venture. We think the descriptive term applied to the legal relationship between the parties and resulting from the alleged oral agreement and the conduct of the parties to be wholly immaterial. The existing legal relationship between the parties must be determined from the evidence.

Much of this record consists of the testimony of witnesses who personally appeared before the trial court, although some facts were stipulated as to the deeds and the deposition of one witness was read to the court. In reviewing this case on appeal, we are of course governed by Supreme Court Rule 73.01(d), V.A.M.R. as follows: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the ques-

tion was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." This rule is particularly applicable to certain assignments of error presented to us on this appeal.

Plaintiff Hallard Heald was engaged in the "used car" business and he also operated a drive-in theatre in St. Joseph. Nick Erganian owned and operated a grocery store.

Plaintiff testified that in July or August, 1960, he had a conversation with Mr. Erganian at the meat counter in defendants' store about the property located at the intersection of Lake and Colorado, and suggested that it was a good buy and that he was going to buy it, since plaintiff had to move his business from its then location. Mr. Erganian said that he was also interested in buying property in south St. Joseph. He suggested that, if plaintiff would find suitable property, they could buy it and they "would be partners." Plaintiff told him that he already had the deal worked out on the Lake Street lots and Mr. Erganian stated that, if plain- he would furnish the money and that if we "would sell the lots at a profit, we would split, or any other property we bought or sold or leased, whatever we made off it, we would split the money." As stated, plaintiff had contacted the owner of these lots before this discussion and the deal was consummated at the E. L. Smith office. Plaintiff had discussed the matter with Mr. Erganian three or four times and advised him "that the lots were tax title property." The price agreed on was $1000 but eventually only $900 was paid. The reduction in price was the result of plaintiff's negotiation with the owner and the recognition by the parties that the tax title would have to be quieted and determined. Plaintiff testified: "Title to the

lots were put in Mr. Erganian and his wife's names because I had no collateral." Plaintiff delivered defendant Erganian's $900 check, received the deed and took it to defendants.

After the property was purchased plaintiff took possession of it and had certain advertising signs owned by the Hargrove Advertising Company removed, the property graded and graveled and a used car sales office built thereon. Subsequently, plaintiff and Mr. Erganian negotiated with one George Herring with reference to building a building on the property to house a laundromat and to lease the property to an operator. Plans were drawn and figures obtained at Mr. Erganian's request, but ultimately the proposition was rejected. Plaintiff testified: "Nick told Mr. Herring that we had the plans for the building and the cost of it and that Nick and I would have to discuss it and we would let him know about building the building." Although plaintiff was using the Lake Street lots during this period he did not pay any rent and no rent was demanded of him and nobody requested possession of the property.

Subsequently, one Hubert Munsell wanted to acquire the Lake Street Property and he had a conference with plaintiff and Mr. Erganian. Mr. Munsell offered $3500 for this property, less Munsell's fee of $200. Mr. Erganian told Mr. Munsell at the conference that whatever plaintiff decided to do would be all right with him. Later, Mr. Erganian told plaintiff that he felt they could get the $200 if they waited a while, and, if so they would sell; however, the purchaser did not increase the bid and the property was not sold. At that time Mr. Erganian had invested approximately $1350 in these lots and plaintiff wanted them sold and the profits divided. Thereafter, plaintiff signed a contract with the Hargrove Advertising Company to reinstall some signs on the lots. He also collected the rent and Mr. Erganian was not consulted. Plaintiff paid no taxes on these lots, since the taxes were paid by the Hargrove Advertising Company.

Thereafter, in the spring of 1961, plaintiff located a piece of property on King Hill at Kansas Avenue which he thought was suitable to buy. It belonged to one Robert L. King. Plaintiff discussed the purchase of this property with Mr. Erganian, since the property could be acquired for $3300 and leased back to King for $75 per month. Mr. Erganian wanted to inspect the property and did so with plaintiff. Mr. Erganian said it was a good deal and that "we will buy it." He gave plaintiff $100 in cash to close the deal. However, when plaintiff went back to see Mr. King, King said he would have to discuss the proposition with his wife. As a result, the deal could not be closed and plaintiff returned the $100 to Mr. Erganian.

Thereafter, Mr. Erganian told plaintiff that he would like to own the two lots on the north of his store since he wanted property for a parking lot. He told plaintiff that he had tried to buy the property some four years earlier but could not. He asked plaintiff to find out who owned the property and if it could be purchased. Plaintiff contacted the owners and negotiated with them on the price, had the deed prepared, naming defendants as grantees, and the deal was closed in the office of plaintiff's attorney, and in the presence of Mr. and Mrs. Cramer, plaintiff and Mr. Erganian. When they met together plaintiff introduced Mr. Erganian to Mr. and Mrs. Cramer as "my partner. * * * He is going to give you the money." Mr. Erganian made no objection to the statement in his presence that "he is my partner." The payment of $2000 was made with Mr. Erganian's check.

Subsequently, plaintiff asked Mr. Erganian to sell the respective properties they had acquired and Mr. Erganian admitted that he owed plaintiff money and offered to pay plaintiff $1500 *for his interest in the properties they had acquired,* but no payment was made.

On cross-examination of plaintiff it appeared that it was a part of the original deal to have the title to the Lake Street lots quieted and determined in the name of Mr. Erganian and his wife. Suit was brought by attorney Don Pierce. Plaintiff's present counsel represented the unknown defendants in that action. Plaintiff was not a party to that suit and did not pay the court costs, cost of publication, nor the attorney's fee, but plaintiff had consulted the attorney, ascertained the cost of a quiet title suit and had obtained a reduction of the purchase price from $1000 to $900, because of the necessity for the proposed suit to quiet title.

With reference to the lots adjacent to defendants' store, plaintiff contacted the owners on behalf of both Mr. Erganian and himself. Plaintiff's interest in the property was "that Nick made a deal with me that we would buy property and if we could sell it and make money we would split the profits." The property was to be purchased for both plaintiff and defendants, but Mr. Erganian was to put up the money and they were to split the profits; however, Mr. Erganian refused to sell the property. As to the Lake Street property, he didn't necessarily refuse to sell it, but the prospective purchaser refused to buy unless the $200 to the agent would be paid.

When the lots adjoining the defendants' store were purchased with plaintiff's aid, the lots were bought with the idea of using it for a parking lot for customers, but subject to the partnership agreement. They were bought with the same idea that the other property was purchased. Plaintiff also said they were not bought for use as a parking lot, but that Mr. Erganian was using the property as a parking lot; that plaintiff had not paid any taxes on any of the property; that he had not put any money in the property, but only his services, as stated; and that he had used the Lake Street property rent free. Plaintiff also admitted that he had no contract or partnership agreement in writing with Mr. Erganian; and that the transactions were had in

defendants' names and the deeds made to them, because he (plaintiff) had "no collateral." Plaintiff further admitted that he was frequently in the Erganian store to buy groceries; that a pretty good balance existed from time to time; and that his indebtedness was approximately the amount sued for in the counterclaim, to wit, $257.-60.

The testimony of Robert L. King tended to show that he had had a barber shop at 4903 King Hill; that plaintiff and Mr. Erganian came to his office sometime during July, 1961; that their purpose was to purchase his building; that they made him an offer for it; that his negotiations were carried on with Mr. Hallard Heald, although Mr. Erganian made an inspection with Mr. Heald; that he did not sell his property because his wife wouldn't let him; and that he had had no dealing with them, "except the one where they tried to purchase my building." He expressed his conclusion that Mr. Heald had come to see him as an agent of Mr. Erganian.

The testimony of Mrs. Harold Cramer, one of the grantors in the mentioned deed for the two lots, tended to show that she met Mr. Erganian at attorney Pierce's office; that plaintiff Heald had consulted her with reference to the sale of her property adjacent to the Erganian store; and that the transaction was closed in Mr. Pierce's office, where for the first time she saw Mr. Erganian, who was introduced to her by Mr. Heald "as his partner." Mr. Heald said: "This is my partner, Mr. Erganian." Mr. Erganian made no objection to the description. The purchase price was paid by Mr. Erganian's check. She knew nothing about the business relationships between plaintiff and Mr. Erganian.

The testimony of George L. Herring tended to show that he knew Mr. Erganian and Mr. Heald and had a conference with them about the property at Lake and Colorado. He discussed the question of putting buildings on these lots. He presented his proposal for the construction of two build-

ings. Mr. Erganian, on receiving the price, said "they would discuss it" and let him know. Mr. Herring testified: "Nick told me, he said they would have to discuss it and they would let me know."

The testimony of Hubert Munsell tended to show that he was a real estate salesman and he met with Mr. Erganian and Mr. Heald and talked about purchasing the used car lots. He presented a purchase agreement to Mr. Heald and Mr. Erganian at the Erganian store. Mr. Becker was the buyer he represented and he presented a signed contract for $2500. He conferred with both Mr. Heald and Mr. Erganian. He first took the contract to Mr. Heald and he said, "I will have to take it to my partner." This answer was not responsive to the question asked, but no motion to strike was made. The witness had previously testified without objection: "Well, I took it to Mr. Heald and he said, 'we will go see Mr. Erganian with it,' " and so they went to Nick Erganian's store. Mr. Erganian said for Heald to talk to his wife in regard to it and they would talk it over some more. Witness later made another offer of $3500 and he dealt with both Mr. Heald and Mr. Erganian and showed both of them the contract and the check in support of it, but no sale was made.

The deposition of one John E. Smith was read by agreement. Mr. Smith's testimony tended to show that on the 9th day of August, 1960, he sold the four lots on Colorado and Lake Avenue to Hallard Heald. Mr. Heald had interviewed him and he advised that he would take $1000 for the lots. Later Mr. Heald came back and talked about the necessity of a quiet title suit and Smith offered the lots for sale for $900. Heald gave him the check for the purchase price. The check was signed by Nick Erganian. He did not recall to whom the deed was made, but he and his wife had signed and delivered it. The witness had had no dealings whatever with Mr. Erganian. When the quiet title suit was heard both Mr. Smith and Mr. Erganian were present. While he did not reall the name of the grantees in the deed he negotiated with Mr. Heald and assumed that the property was deeded to him.

Attorney Don Pierce testified that he was acquainted with Mr. Erganian and Mr. Heald and was also acquainted with both tracts of real estate in question, to wit, the property on Lake Street and the property adjacent to Erganian's store. He represented both Mr. Erganian and Mr. Heald with reference to these properties, but Mr. Erganian paid his fee. Mr. Heald called him with reference to quieting the title of the Lake Street property, but when the abstract was extended and delivered the abstract showed the property to be in the names of Mr. and Mrs. Erganian, so he talked to Mr. Erganian with reference to the ownership of the property and about proceeding with the litigation. He also discussed with them the amount of his fee and the fact that Mr. Heald had employed him, although the title to the property stood in the name of Mr. and Mrs. Erganian. Mr. Erganian told him to proceed; that the property was to be quieted in his and his wife's name, because he had put up the money; that Heald didn't have the money, but that Hallard Heald had an interest in the property, since they were speculating in this real estate. Witness examined the abstract for the property adjacent to Mr. Erganian's store and his opinion on the title was directed to Mr. Erganian, but Mr. Erganian and Mr. Heald and the sellers (Mr. & Mrs. Cramer) were in his office when the transaction was closed. He said he represented both Mr. Heald and Mr. Erganian. He was present when the introductions were made. Mr. Heald had first contacted him with reference to the property. He had prepared a deed and delivered it to Mr. Heald, because it had to be sent away for some of the Cramer heirs to sign. When closing time came, some of the Cramers came to his office. The deed was made out to Mr. and Mrs. Erganian. He heard Mr. Heald introduce Mr. Erganian to the Cramers "as his partner." Mr. Erganian made no objection or complaint on

being so described. See Van Hoose v. Smith, 355 Mo. 799, 198 S.W.2d 23, 27 [8, 9]. The record further shows that Mr. Pierce testified as follows:

"THE COURT: Tell what he said if you can remember.

"A Mr. Heald first contacted me and employed me to quiet the title to it, and told me that he in [sic] and Nick were in together.

"MR. KRANITZ: I object to what he told you. It is hearsay.

"THE COURT: Sustained.

"A (continuing) I then contacted Mr. Erganian to confirm the fact of whether or not he wanted me to proceed with it. And he said, 'Yes, go ahead with it'. And I quoted my fee to Mr. Heald. Then when the abstract came through it was in the name of Mr. and Mrs. Erganian. At that time I asked Mr. Erganian if Hallard [Heald] was to be included in it. He said, 'I have put up all the money. Hallard [Heald] is in it all right, but I want it in my and my wife's name.' "

\* \* \* \* \* \*

"A When I called him [Mr. Erganian] and told him that Mr. Heald had employed me to file a quiet title suit for him, and Mr. Heald had told me Mr. Erganian was going to furnish the money, and I called Mr. Erganian to confirm whether or not I should go ahead. \* \* \* Mr. Heald employed me and told me to go ahead and file this suit for he and Mr. Erganian and that Mr. Erganian was furnishing the money. In view of that I felt it important to confirm it with Mr. Erganian before I proceeded. \* \* \* It might be a mischoice of words, but Mr. Erganian told me with reference to the Lake and Colorado property that he and Hallard [Heald] owned it."

Before Mr. Heald had instituted the present suit he came to see him (Mr. Pierce) and talked to him about it. Witness told him he could not represent him in this matter, because he had represented both Mr. Heald and Mr. Erganian in the other two matters. Witness further said he "specifically and unequivocally recalled that Mr. Heald introduced Mr. Erganian to the Cramers as a partner."

Defendant Nick Erganian testified in his own behalf that he and his wife owned both of the tracts of real estate in question here, and that no one else had any interest in it. He denied any agreement with Mr. Heald to share the profits in any real estate bought or sold, where witness was furnishing the money. He had no agreement with Mr. Heald with reference to any of this property. He said that Mr. Heald told him that he would like to have a place to sell used cars and that the mentioned lots could be purchased for $900. Witness said he furnished the check for $900, gave it to plaintiff and directed plaintiff to have the abstract prepared and title placed in defendants' names. He was not a partner of plaintiff since he was buying the property for himself. He did not rent the Lake Street property to plaintiff, but permitted plaintiff to use it as a used car lot, because plaintiff agreed to pay him $10 for each car sold from the lots. Nothing had been paid, although witness had continued to permit Mr. Heald to occupy the lots. The witness further testified that plaintiff was indebted to him for a grocery bill in the sum of $257.60, for which he had filed the counterclaim.

As to the two lots across the street from his store, the witness said that he had tried to buy the lots some three years before but was unable to do so; and that when witness told Mr. Heald that he would like to have the lots for a parking lot for his store, Mr. Heald asked permission to go see about it, and that, subsequently a price had been agreed upon, but that he had no idea of selling the lots since he wanted them for a parking lot. He and Mr. Heald were both present when the agreement with the Cramers was con-

summated and a deed taken in the name of himself and wife, although his wife was only a nominal party. He said that if Mr. Heald had wanted compensation for services he should have advised him. He told plaintiff he might get him $1500, but he assumed that plaintiff wanted to borrow that amount; and that he didn't know that plaintiff was wanting that amount "just because he had done me a favor of buying two lots, if he had bought the two lots." The sum of $1500 had no relationship whatever to the four lots on Lake Street or the two lots near defendants' store. He thought plaintiff merely wanted a loan.

On this evidence the trial court found that the agreement between plaintiff and Mr. Erganian, pertaining to the property in suit, was that they were speculating in the property; that the agreement was, as Mr. Heald had said it was, to wit, that they would buy property, Mr. Erganian would put up the money, and when it was sold Mr. Heald would get half the profits for his efforts. The court held that plaintiff was the owner of a one-half interest in the respective properties; that Mr. and Mrs. Erganian were the owners of the other half interest; that Mr. Erganian was entitled to a first lien on the Lake Street property in the sum of $1300, which the plaintiff had conceded Mr. Erganian had in the property; and that Mr. Erganian was entitled to a first lien on the two lots adjoining his store for the $2000 he had paid as the purchase price for these two lots. Since there was no evidence as to the rental value of the properties, the court charged Mr. Heald with $1 for the use of the lots on Lake Street and Mr. Erganian $1 for the rental value of the property he was using as a parking lot for his store. The court further held that, there being no dispute concerning the counterclaim, the defendants were entitled to a judgment for $257.60 against plaintiff. The court further found that the respective properties could not be equitably divided between the parties in kind and ordered a sale in partition and that the proceeds be divided between the parties in accordance with his finding. The decree was entered accordingly and the cost taxed one half against plaintiff and one half against defendants.

■ Under points and authorities appellants first contend that the court erred in granting plaintiff relief because plaintiff's petition failed to state a cause of action against defendants in that it failed to allege that plaintiff was a licensed real estate broker or salesman at the time the alleged cause of action arose. Appellants cite § 339.160 RSMo 1959, V.A.M.S. applicable to unlicensed real estate brokers. There is no merit in this assignment because there was no pleading or evidence tending to show that plaintiff was a real estate broker, or subject to the provisions of Chapter 339, RSMo 1959, V.A.M.S. Section 339.010 RSMo 1959, V.A.M.S. defines a real estate broker as "any person * * * who advertises, claims to be or holds himself out to the public as a real estate broker or dealer" and it further provides that the chapter shall not "apply to any person *who does not advertise or hold himself out to the public as a real estate broker or dealer* * * * to sell, or rent or lease or offer to rent or lease any real estate * * *." (Italics ours.)

■ Appellants further contend that the court erred in finding a relationship "in the nature of a partnership or joint venture beween the parties." In support of this assignment appellants say that plaintiff attempted to plead a "joint venture," but directed his proof to a partnership relationship. Appellants also contend that the court erred in entering judgment for plaintiff, "because the proof was directed to a relationship of partnership whereas the petition alleged the existence of a joint venture.". It is true that plaintiff's petition refers to the agreement between the parties as a basis for "a joint venture," but we think it wholly immaterial as to the name applied to the relationship between the parties and resulting from the facts

shown in evidence. Any variance between pleadings and proof was also immaterial since the pleadings may be considered as amended to conform to the proof. See Supreme Court Rule 55.54. No evidence was objected to on the theory that it was not within the issues made by the pleadings.

■ The petition stated a cause of action to quiet and determine title to the described real estate under § 527.150 RSMo 1959, V.A.M.S. Plaintiff alleged his theory of the contract entered into with defendants, and its performance on his part and that the described real estate had been purchased and defendants had furnished the purchase price and taken title in their names; that a controversy has arisen between plaintiff and defendants regarding their respective rights in and to said real estate, since defendants claimed ownership to the exclusion of plaintiff. Plaintiff asked the court to declare, in accordance with his theory, that he was the owner of an undivided one-half interest in the described real estate, subject to the advancements made by defendants. A cause of action was stated. La Presto v. La Presto, Mo.Sup., 308 S.W.2d 724, 726.

While appellants in effect concede that a partnership relation must be based on contract and that there may be almost as many different kinds of partnerships as there could be contracts with reference to the same, nevertheless, appellants insist that no basis for the finding of a partnership appears from the record. Appellants say that, "although there was evidence that the parties were to divide the profits upon resale of the land, there was *no evidence that they were to divide the losses,* if the properties were sold for less than costs and expenses" (italics ours); that the evidence fails to affirmatively show that the parties *intended to share the losses as well as the profits;* that there was no evidence that it was the intention of both parties that a partnership exist; that there was no

evidence tending to show that plaintiff had the right to contract for the purchase or sale of property or to incur liabilities binding on both parties; that, although plaintiff at best could locate properties to buy or buyers for properties bought, the defendants alone had the absolute right to refuse to buy or to sell; and that a partnership inter sese could only arise from evidence showing the intention of both parties that there be a partnership and that no such evidence appeared.

For a definition of a "joint adventure" see Scott v. Kempland, Mo.Sup., 264 S.W. 2d 349, 354, et seq.; and also see Pigg v. Bridges, Mo.Sup., 352 S.W.2d 28, 33, stating that: "Joint adventures arise out of contract, but may be established without specific formal agreement and may be implied or proved by facts and circumstances showing such a relationship was in fact created," and that "There need not necessarily be an agreement to share losses." In State ex rel. McCrory v. Bland, 355 Mo. 706, 197 S.W.2d 669, 672, 168 A.L.R. 929, authorities are cited to the effect that "a specific agreement to share losses is not necessary in either a partnership or a joint adventure. Such an agreement may be implied." It is further pointed out that rights as between adventurers are governed by the same rules that govern partnerships. In Gales v. Weldon, Mo. Sup., 282 S.W.2d 522, 527, it is pointed out that joint adventures are in the nature of partnerships and "generally governed by the same rules of law, the principal difference being that a joint adventure is usually limited to a single transaction." And see Morrison v. Caspersen, Mo.Sup., 323 S.W.2d 697, 702, where the court said: "In the view we take of the case, however, it appears to be unnecessary to reach a positive conclusion in that respect [existence of a joint adventure] because, as we see it, whether the agreement is considered as one providing for a joint adventure or whether it was simply an agreement creating certain contractual rights, the relief

to which the parties are entitled is the same." The same rule applies to the facts before the court at this time.

The issue presented on the present appeal is not whether the evidence was sufficient to show the details of a contract for the formation of a partnership, where the contract has stated the respective rights and duties of the parties thereto, nor whether a joint venture is shown, but rather the question is as to what legal relationship, if any, was created between the parties and what relationship was brought into existence by reason of the alleged oral agreement and plaintiff's alleged compliance therewith.

■ Appellants further insist that the court overlooked the testimony of Robert L. King who said that plaintiff came to him as the agent of Mr. Erganian. Appellants further state that the court erred in basing its decision on the testimony of Munsell, Smith and Herring because the testimony of these witnesses is equally consistent with the relationship of principal and agent as with the existence of a partnership agreement. We need not review these contentions because, on the appeal of an equity case, we try the case de novo, and where the appellant has brought up the entire record, as here, this court considers such evidence in the record as it deems admissible, excludes from consideration evidence improperly admitted, and reaches its judgment on the competent evidence offered without regard to the trial court's rulings. Middleton v. Reece, Mo.Sup., 236 S.W.2d 335, 341 [1]; Bowman v. Kansas City, Mo.Sup., 233 S.W.2d 26, 29 [1]. Also see Supreme Court Rule 73.01 and Sec. 510.310 RSMo 1959, V.A.M.S.

■ Appellants further contend that the trial court erred in entering judgment for plaintiff because the alleged agreement between plaintiff and the defendants "violates the rule against perpetuties, in that nothing vests in the plaintiff until the resale of the properties, an event which is not certain to occur." This assignment is not supported by any evidence in the record and it ignores both the pleadings and plaintiff's evidence. Plaintiff alleged that the real estate purchased was to be owned by the parties, with plaintiff being entitled to a one-half interest and, in the prayer of the petition, plaintiff asked the court to so declare the respective interests of the parties and to further declare that the described real estate was *subject to the advancements made by defendants for the purchase thereof.* The petition clearly asks affirmative equitable relief, relief which only a court of equity could grant. Plaintiff's evidence, as stated, shows that the property was purchased for resale and that plaintiff was to receive one half of the profits. While the petition didn't expressly so state, the plaintiff was permitted to testify without objection or motion to strike that defendant Erganian said: "We could buy up different lots and property if I [plaintiff] could find it, and that we would be partners." When the witness was asked what he was to furnish to the partnership, the court sustained an objection by defendants' counsel that it was a matter for the court to determine "what is a partnership." Thereafter, without objection or motion to strike, plaintiff testified concerning the agreement of the parties as hereinbefore set out. If such was the agreement between the parties, and the court so found, the rule against perpetuities could not and would not apply, because when a piece of property was acquired through plaintiff's efforts and the defendants furnished the purchase price, the plaintiff, upon the execution and delivery of deed to defendants, became vested with an equitable interest in the described property and there was no further estate to which the mentioned rule could apply, since plaintiff's equitable interest was then vested. Cordia v. Connolly, Mo.App., 261 S.W. 729, 732 [2, 3]. For statement of the rule against perpetuities see Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S.W. 629, 634; Nelson v. Mercantile Trust Co., Mo.Sup., 335 S.W.2d 167, 172 [1].

■ We have hereinbefore reviewed the testimony of attorney Don Pierce and it need not be reviewed here, but appellants contend that Don Pierce represented them in the Cramer transaction in closing the deal and also in quieting title to the Lake Street property; and that statements by Mr. Erganian to him were privileged communications between attorney and client and were, therefore, inadmissible because privileged. Although Pierce represented both Hallard Heald and the defendants, the defendants did not waive the privilege. It was admitted that there were no conversations between Don Pierce and either plaintiff or defendants when all were present; and that Don Pierce did not have the consent of defendants to testify with reference to Mr. Erganian's statements to him. The court erred in admitting these several statements over the repeated objections of defendants' counsel. We agree that this testimony concerning statements made by Mr. Erganian to his counsel, when no one else was present, were improperly admitted in evidence and that this evidence must be and is excluded from our consideration in our review de novo of the evidence shown in the transcript. In the case of Hull v. Lyon, 27 Mo. 570, 576, in an opinion subsequently criticized in other respects, the court said: "Though Hull, the plaintiff, had an interest with Moore in the matter about which the common attorney was consulted, he had no right to any communications Moore might have made. The aim of the evidence was to affect Moore and those claiming under him. Any information Moore may have communicated, or any facts he may have stated, or admissions he may have made, to his attorney, cannot be disclosed at the instance of one who had a hostile interest in the subject of the consultation, although he attended it and employed the same attorney to advise as to his rights and interests in the matter about which they consulted. The consent of both parties was necessary to make the attorney a competent witness. Whether a communication is a privileged one is a question for the court."

■ Appellants further contend that the court erred in admitting certain hearsay testimony, as where Munsell testified that when he had a contract for the purchase of the property that he took it to Mr. Heald and Mr. Heald said: "I will have to take it to my partner," and that, thereafter, witness Munsell accompanied Heald to Erganian's place of business, where the proposition was discussed.

While it is true that the record so shows and that there was no objection, or motion to strike and the answer was not called for by the question, but the testimony remained in the record for what it was worth and no error was committed in permitting it to so remain, yet in reviewing the record at this time we shall disregard this hearsay statement as having no value whatever. We shall also disregard the part of Don Pierce's testimony which was improperly admitted over objection.

Appellants further contend that the court erred in ordering partition after reaching the conclusion that plaintiff was the owner of a one-half interest in these respective properties, subject to the mentioned liens. Appellants say there was no evidence adduced by plaintiff to prove the allegations of Count II of his petition wherein he alleged that partition of said real estate in kind cannot be made without serious injury to the parties herein.

The court did not err in ordering partition of this property consisting of one tract of four lots subject to a purchase money lien for $1300 and another tract of two lots near the Erganian store subject to a purchase money lien for $2000, and where each tract appeared to have been improved as a unit.

■ Appellants also say there was no evidence in the record as to the cost of improvements on the lots adjoining defendants' store, nor the costs of the improve-

ments on the property on Lake Street. We agree that the parties offered no testimony as to the rental value of either of these tracts, nor as to the value of the improvements made by either plaintiff or defendants, nor was there evidence as to the amount of taxes paid by either of the parties nor as to any rentals received by plaintiff from signboards or otherwise. In this situation, since both counts of the petition and the counterclaim of defendants were submitted to the court in one proceeding and evidence heard thereon and findings made, without any objection by either party during the course of the trial or at the conclusion of it or even after the court's statement as to his determination of the issues presented and prior to the formulation and recording of the decree in accordance therewith, we think it is now too late for either party to complain.

Plaintiff's petition had alleged expenditures in excess of $600 for improvements on the Lake Street lots and plaintiff prayed that defendants' interest in the property be charged with these improvements, but he offered no evidence as to the cost or value of these improvements, although he testified with reference to them. There is nothing in the record to indicate the amount of any expenditures by defendants except in acquiring the properties and quieting title.

While we find no basis in the evidence for the court's assessment and determination of the total rental value of the respective tracts at $1 each, nevertheless, neither party was prejudiced by such a finding since, if they had wanted it otherwise, it was their duty to have offered evidence at the trial.

Appellants further contend that the decree is contrary to the trial court's finding of facts in that the trial court found plaintiff entitled to *compensation* and awarded him *title* in fee simple instead. We find no merit in this assignment. It is true that the court, in reviewing the evidence, said that it was only reasonable to assume that the agreement was as stated by plaintiff in that plaintiff had said they would buy the property, Mr. Erganian would put up the money, and then when sold "for *his efforts* Mr. Heald would get half the profit." (Italics ours.) The court further stated that "the court does find that he [plaintiff] is a half owner in the properties in question and that Mr. and Mrs. Erganian are the owners of the other half." Each of the interests were subject to purchase money liens.

Appellants argue that "entitlement to half the profits, if any, is not entitlement to half ownership in real estate"; and that the different parts of the decree cannot be reconciled. We do not agree in view of the court's imposition of special liens for the purchase price of the respective tracts. There was no finding that plaintiff was entitled to receive other than the relief the court granted. Defendants' position was, as stated, that if any service was performed by plaintiff it was voluntary and not rendered on the basis of any agreement for compensation.

Appellants' further contention is that the court erred in overruling appellants' after-trial motion for a judgment or a new trial on the grounds hereinbefore stated. Since we have ruled on the grounds present, it will not be necessary to again review the particular assignments of the motion for a new trial or for judgment after the decree had been entered.

The ultimate decision of the Court in this case of necessity turns largely upon the credibility, weight and value of the oral testimony of the witnesses who appeared and testified before the trial judge and particularly upon the oral testimony of plaintiff and defendant Nick Erganian. Plaintiff alone testified as to the terms of the particular oral contract between himself and defendant Erganian. Defendant Erganian's testimony was a complete denial on essential issues. The trial court accepted as true the testimony of the plaintiff and the court found the facts in accord

with plaintiff's testimony and granted the relief asked. We must and do defer to the finding that plaintiff's testimony was true. While the use of the terms "partners" or "parnership" may have little meaning or value when used by a layman unskilled in the law, nevertheless, such value as it does have tends to corroborate the testimony of plaintiff. On trial de novo and upon consideration of only the competent and admissible evidence, we must and do find the issues for plaintiff, respondent herein, and that he is entitled to the relief asked and granted.

The judgment of the trial court is affirmed.

All concur.

## ON MOTION FOR REHEARING

### PER CURIAM.

■ Appellants have filed a motion for rehearing or, in the alternative, for an order transferring to the Court en Banc because this court erred in affirming the judgment, since the evidence in the record was insufficient to establish a partnership between Hallard Heald and Nick Erganian, in that the elements of the proposed partnership were not unequivocally and unconditionally agreed to by all the parties to the agreement without any variance between the propositions or conditions proposed by one and accepted by the others, citing Chapin v. Cherry, 243 Mo. 375, 147 S.W. 1084; Freeman v. Bloomfield, 43 Mo. 391, 392. The opinion sufficiently shows that the contract between the parties was in the nature of a "joint adventure" and it was entirely unnecessary for the evidence to show a partnership between the parties.

■ Appellants further contend that the court erred in affirming the decree ordering a sale in partition because "partition was improvidently ordered contrary to the provisions of Supreme Court Rule 96.20," requiring the trial court to appoint commissioners. The opinion points out that Count 2 of the petition alleged and the evidence showed and the court found that partition in kind of said real estate could not be made without great prejudice to the parties in interest. Counsel has overlooked Supreme Court Rule 96.01 expressly providing that if partition cannot be made "without great prejudice to the parties in interest" a sale of the premises may be ordered, as was done in this case. See Laird v. Lust, Mo.Sup., 98 S.W.2d 768, 770[4, 5]; Joerger v. Joerger, 193 Mo. 133, 91 S.W. 918, 921.

■ Appellants again insist that "no evidence was adduced by respondent in proof of the allegations of Count Two of his petition, wherein partition of the lands in issue is sought." Counsel overlooks the fact that the two counts of plaintiff's petition and the counterclaim of the defendants were tried in a single proceeding before the court. The evidence showed, as pointed out in the original opinion, that the property consisted of one tract of four lots, subject to a purchase money lien for $1300, and the other tract consisting of two lots was subject to a purchase money lien for $2000, and that the several lots in each tract appeared to have been improved and used as a unit. Since the court further found that the respondent and appellant, Mr. Erganian, each had a half interest in the two properties and that Mr. Erganian owned the liens on the property, the record was entirely sufficient to sustain the court's finding that "partition thereof in kind cannot be made without great prejudice to the parties," and that the real estate should be sold in partition.

■ Appellants' final assignment is that the court ignored appellants' contention in their original brief, Point IV (e), wherein appellants complained of the trial court's failure to impress a lien upon the proceeds of the partition sale in favor of appellants for the amount of their judgment on the counterclaim. The record shows that appellants' counterclaim for $257.60 was for groceries sold and delivered to respondent,

and that it had no relationship whatever to plaintiff's action. No authorities have been cited authorizing this court to impress the proceeds of the sale of the property in partition with a special lien for the amount of defendants' judgment against plaintiff for groceries, and we find none.

The motion for a rehearing or to transfer to Court en Banc is overruled.